IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **WILLIAM GARCIA,**<br>for himself and all others similarly situated,<br>Plaintiff,<br>v.<br><br>**VERTICAL SCREEN, INC.,**<br>Defendant. | Case No. 18-cv-4718 |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
MOTION FOR ORDER AUTHORIZING NOTICE TO
<u>SIMILARLY-SITUATED PERSONS UNDER 29 U.S.C. § 216(b)</u>**

## I.     INTRODUCTION

William Garcia ("Plaintiff") respectfully moves, under the Fair Labor Standards Act of 1938, 29 U.S.C. § 216(b) ("FLSA"), to authorize the dissemination of FLSA Notice to: "all persons who have worked as a full-time, hourly-paid Vertical Screen Researcher or Team Leader during the past three years" (the "FLSA Collective").

As demonstrated by the allegations in Plaintiff's Complaint and the Declarations submitted with this Motion, the FLSA Collective is comprised of similarly-situated employees who worked in a single location, received common training and were subjected to common policies and practices that potentially violate the FLSA. Complaint, ¶¶ 7-11 [Doc. 1]. Because the filing of Plaintiff's Complaint has not tolled the statute of limitations running on the FLSA Collective members' claims, each day that passes without providing them an opportunity to join this case diminishes (and may ultimately extinguish) their claims. Accordingly, Plaintiff respectfully asks this Court to promptly grant his Motion and authorize dissemination of his proposed Notice to the members of the FLSA Collective. FLSA Notice (Ex. A)

## II.     BACKGROUND FACTS

Vertical Screen, Inc. ("Defendant") is a "family" of four entities in business under the same ownership since 1989 and with a single location in Warminster, PA (Bucks Co.).  Complaint, ¶ 6 [Doc. 1], *citing* https://www.verticalscreen.com/.  Defendant's business is comprised of three "subsidiaries" that provide specialized applicant screening services, the Business Information Group (financial services), Certiphi Screening (healthcare) and True Screen (general business, non-profits and schools) and Fieldprint, a "sister company" that provides fingerprinting and identity services.  *Id., citing* https://www.verticalscreen.com/why-verticalscreen/.  Throughout the relevant period, Defendant has controlled all significant business functions of the entities in its "family", including: setting and implementing the work, timekeeping and compensation policies and practices at issue in this matter, providing training on these policies and procedures, tracking employee hours worked and setting and paying employee wages.  *Id*.

Plaintiff worked for Defendant as a full-time, hourly Researcher from August 2013 to August 2018.  Complaint at ¶¶ 5, 7 [Doc. 1]; Garcia Dec.*,* ¶ 2 (Ex. B).  Plaintiff was one of about 900 hourly-paid Researchers and Team Leaders whose daily work involves running pre-employment background checks in various databases (court records, criminal records, education records, employment records, etc…) for people applying for work with Defendant's clients.  Complaint at ¶¶ 5, 7 [Doc. 1], *citing* https://www.vertical screen.com/our-story/.

All Vertical Screen Researchers and Team Leaders receive similar training and are subject to common wage and hour policies and practices, including those relating to logging-in, timekeeping and compensation.  Complaint at ¶¶ 5, 7 [Doc. 1]; Garcia Dec. at ¶ 3 (Ex. B); Santana Dec., ¶ 2 (Ex. C); Vertical Screen Employee Handbook (Ex. D).

Defendant's common policies and practices require all Researchers and Team Leaders to spend about ten minutes per day logging-in to a computer to access the ADP timekeeping system, logging-in to the ADP timekeeping system, addressing hardware and software problems that often require them to perform updates, reconfigure passwords and/or repeat the log-in process one or more times until their log-in is accepted – at which point the system starts tracking their time. Complaint at ¶ 8 [Doc. 1]; Garcia Dec. at ¶¶ 4, 7 (Ex. B); Santana Dec. at ¶¶ 3, 5 (Ex. C). On days they are unable to access the ADP timekeeping system, Defendant's common policies and practices require all Researchers and Team Leaders to spend an additional five minutes per day writing an e-mail to their supervisor describing their log-in problems and advising they are at work – at which point their supervisor uses their e-mail time-stamp as their start-time for the day in the ADP system. Complaint at ¶ 8 [Doc. 1]; Garcia Dec. at ¶¶ 5, 7 (Ex. B); Santana Dec. at ¶¶ 4-5 (Ex. C). Defendant did not pay any wages for the ten to fifteen minutes per day Plaintiff and the FLSA Collective spent resolving these log-in problems, which typically cost them about 2-4 hours per month in overtime wages. Complaint at ¶ 9 [Doc. 1]; Garcia Dec. at ¶ 7 (Ex. B); Santana Dec. at ¶ 5 (Ex. B).

During his employment, Plaintiff experienced problems logging-in to Defendant's timekeeping system almost every day that included: having to wait for other employees to log-out of the ADP system before he could log-in, having to wait for the computer to load, having to wait for the ADP system to load, having to update or reconfigure his password, experiencing a failed log-in and having to re-start the log-in process, being unable to log-in and having to send his supervisor an e-mail describing that day's log-in problems. Complaint at ¶ 9 [Doc. 1]; Garcia Dec. at ¶ 7 (Ex. B). Defendant did not pay Plaintiff any wages for time spent addressing and resolving these log-in issues. Complaint at ¶¶ 8-9 [Doc. 1]; Garcia Dec. at ¶ 7 (Ex. B). Other members of

the FLSA Collective experienced these same problems and delays associated with Vertical Screen's log-in procedure and were not paid any wages for time spent addressing and resolving log-in issues.  Complaint at ¶¶ 8, 10 [Doc. 1]; Garcia Dec. at ¶ 9 (Ex. B); Santana Dec. at ¶¶ 3-6 (Ex. C).

Plaintiff and other FLSA Collective members regularly communicated with their supervisors, department managers and the human resources department about problems with Defendant's log-in policies and procedures, including that they were regularly not paid for time spent logging-in to Defendant's computer and timekeeping systems each day, but nothing was ever done to address or fix this problem.  Complaint at ¶ 10 [Doc. 1]; Garcia Dec. at ¶¶ 8-9 (Ex. B); Santana Dec. at ¶ 6 (Ex. B).

Defendant's common policies and practices also require department managers and supervisors to review Researchers' and Team Leaders' weekly work hours and remove any "unapproved" overtime hours, for which no wages are paid.  Complaint at ¶ 8 [Doc. 1]; Garcia Dec. at ¶ 6 (Ex. B); Santana Dec. at ¶ 7 (Ex. C).

During his employment, Plaintiff regularly logged 40 or more hours of work time per week.  Complaint at ¶¶ 5, 9 [Doc. 1]; Garcia Dec. at ¶ 10 (Ex. B).  Although he was not involved in the overtime approval process, so lacked detailed information about how it was done, Plaintiff came to notice that the overtime approval process typically reduced his work time by one to two hours each month.  Complaint at ¶ 9 [Doc. 1]; Garcia Dec. at ¶ 10 (Ex. B).  Other members of the FLSA Collective also suspected that their managers or supervisors were using the overtime approval process to cut overtime wages from their paychecks each month.  Complaint at ¶¶ 8-11 [Doc. 1]; Garcia Dec. at ¶¶ 6, 12 (Ex. B); Santana Dec. at ¶ 7 (Ex. C).

Plaintiff and other FLSA Collective members regularly communicated with their supervisors, department managers and the human resources department about hours being "shaved" from their weekly work time, but nothing was ever done to address or fix this problem. Complaint at ¶ 11 [Doc. 1]; Garcia Dec. at ¶¶ 11-12 (Ex. B).

Defendant had many reasons to know about the issues discussed above, including that it: controls the timekeeping and payroll systems and procedures at issue; has administrator access to the timekeeping system; it receives notifications about timekeeping system errors; has access to timekeeping and e-mail system metadata (including personal identifying information) that show employees' failed log-in attempts and time spent resolving log-in issues; provides Researchers and Team Leaders with training to address timekeeping log-in issues; receives e-mails on the verticalscreen.com intranet relating to timekeeping log-in issues and complaints about receiving pay for fewer than all hours worked; and receives frequent complaints from Researchers and Team Leaders about these issues.  Garcia Dec. at ¶ 13 (Ex. B).

Despite having actual, contemporaneous knowledge of all these issues, Defendant made no serious effort to: track the time Researchers and Team Leaders spent logging-in to the ADP system, pay Researchers and Team Leaders wages for this time, or pay Researchers and Team Leaders at the legally-required rate for all of the overtime hours they actually worked.  Complaint at ¶¶ 1, 9, 35, 47 [Doc. 1]; Garcia Dec. at ¶ 14 (Ex. B); Santana Dec. at ¶¶ 5, 7 (Ex. C).

### III. ARGUMENT

#### 1. Collective Actions Under The FLSA Present Significant Benefits

The FLSA authorizes collective actions as follows:

> [a]n action . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and on behalf of himself and other employees similarly situated. No employee shall be a party plaintiff to any such

> action unless he gives her consent in writing . . . and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). Thus, the FLSA permits an employee to bring an action on behalf of other similarly-situated employees, notify them that he has brought a suit and provide them with an opportunity to join if they so choose. *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989). The United States Supreme Court has authorized district courts to certify a collective action and facilitate notice to potential plaintiffs under 29 U.S.C. § 216(b). *Id*. at 169. Collective actions are widely recognized as serving at least four important goals.

First, unlike a state law Rule 23 class action, persons who may "opt-in" to a collective action under the FLSA do not get the benefit of the complaint filing date in terms of tolling the statute of limitations. 29 U.S.C. § 256(c). As a result, opt-in collective members are not considered to have commenced their individual actions until they file a written consent form with the court following the notice process. *Id.* Thus, ordering conditional certification early in litigation protects against claims being diminished and/or outright expired under the statute of limitations by ensuring that all similarly-situated employees have an opportunity to make a timely, informed decision about whether to participate. *Hoffman-La Roche*, *Inc.,* 493 U.S. at 170; *Vargas v. Gen. Nutrition Centers, Inc.,* No. 2:10-CV-867, 2012 WL 5336166, *8 (W.D. Pa. Oct. 26, 2012) ("The use of limited discovery at the outset of this process and the relatively light threshold to achieve conditional certification before significant discovery occurs is precisely to preserve the statute of limitations by allowing the Collective members to join the class as early as possible").

Second, collective actions allow employees whose claims are likely too small to justify individual litigation to pool their resources and pursue their claims together. *Hoffman-La Roche*, *Inc.,* 493 U.S. at 170. By granting conditional certification and authorizing the issuance of court-approved notice, a court maximizes the savings and benefits inherent to the collective action

device. *Id*.

Third, collective actions benefit the judicial system and all parties involved through the efficient adjudication of similar claims in a single action. *Id*. at 171-73 (providing court-supervised notice helps to avoid a "multiplicity of duplicative suits" by allowing all putative class members to opt-in to a single, existing action). *Spellman v. Am. Eagle Express, Inc*., 2011 WL 12855818, *1 (E.D. Pa. Nov. 30, 2011) (a central purpose of conditional certification of collective actions is efficient resolution of the litigation), *citing Craig v. Rite Aid Corp.,* 2011 U.S. Dist. LEXIS 13843, *15 (M.D. Pa. Feb. 7, 2011).

Fourth, by making it practical for employees to bring claims they might not otherwise bring, collective actions provide employers with an additional incentive to live up to the standards that Congress has provided and thus serve the "broad remedial goal" of the FLSA. *Hoffman-La Roche*, *Inc.,* 493 U.S. at 173; *Evans v. Lowe's Home Centers, Inc.*, 2006 WL 1371073, *5 (M.D. Pa. May 18, 2006) (collective actions enable the "lowering cost and limiting the controversy to one proceeding to efficiently resolve the common issues of law and fact").

Since individually adjudicating the merit of each collective group member's claim will unavoidably cause this Court and the Parties to waste significant time and resources, the collective treatment of the small claims at issue should necessarily be favored over the separate litigation of these claims.[1]

---

[1] "Collective action treatment under § 216(b) reflects a policy in favor of judicial economy by which 'the judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity.'" *Deeley v. Genesis Healthcare Corp.,* 2011 WL 3240828 at *1 (E.D. Pa. July 29, 2011) *quoting Hoffman–La Roche, Inc. v. Sperling,* 493 U.S. 165, 170 (1989).

> **2.    Conditional Certification Is Warranted Where The Plaintiff Offers Evidence Beyond Pure Speculation Demonstrating That The Challenged Policy Affected The Proposed Collective Members In The Same Way**

In deciding whether to grant conditional certification and authorize the dissemination of § 216(b) notice, Courts in this Circuit routinely follow a two-step process. *Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61, 85 (3d Cir. 2017).

At the first step, called conditional certification, the plaintiff must make a "modest factual showing" demonstrating "a factual nexus between the manner in which the employer's alleged policy affected him or her and the manner in which it affected the proposed collective action members." *Karlo*, 849 F.3d at 85, *citing Halle v. W. Penn Allegheny Health Sys. Inc.*, 842 F.3d 215, 223 (3d Cir. 2016). This showing is made where the Plaintiff produce "some evidence", "beyond pure speculation" that indicates the existence of "common facts among the parties' claims, and/or a common policy affecting all the collective members." *Meals v. Keane Frac GP LLC*, 2017 WL 2445199, *3 (W.D. Pa. June 6, 2017), *citing* 7B Wright, Miller, & Kane, *Federal Practice and Procedure: Civil* § 1807 at 489-90 (3d ed. 2005); *Galt v. Eagleville Hosp.,* 2017 WL 839477, *1 (E.D. Pa. Mar. 2, 2017); *Waltz v. Aveda Transportation & Energy Servs. Inc.,* 2016 WL 7440267, *2 (M.D. Pa. Dec. 27, 2016).

Federal courts in Pennsylvania have consistently held that the test for conditional certification is subject to an "extremely lenient" standard of proof and, as a result, have routinely permitted the dissemination of Section 216(b) notice. *See, e.g., Waltz,* 2016 WL 7440267 at *2; *Wigton v. Kaplan,* 2014 WL 4272791, *9 (W.D. Pa. Aug. 29, 2014) ("Preliminary or conditional certification of a class for the purpose of providing notice is routinely granted"); *Verma v. 3001 Castor, Inc.,* 2014 WL 2957453, *12 (E.D. Pa. June 30, 2014); *Chung v. Wyndham Vacation Resorts, Inc.*, 2014 WL 4437638, *2 (M.D. Pa. Sept. 9, 2014); *Beauchamp v. Penn Mut. Life Ins.*

*Co.*, 2011 WL 3268161, *3 (E.D. Pa. July 29, 2011); *Sabol v. Apollo Grp., Inc.*, 2010 WL 1956591, *3 (E.D. Pa. May 12, 2010) ("Presumably because of the threshold requirement's leniency, the initial determination usually results in conditional certification.").

In keeping with this precedent – and despite defense arguments to the contrary in virtually every conditional certification opposition – an unbroken chain of Third Circuit case law holds that <u>the conditional certification analysis does not address or involve the resolution of factual disputes, merits issues or credibility determinations</u>.  *Waltz*, 2016 WL 7440267 at *4 ("At the step-one inquiry, the court does not weigh the evidence, resolve factual disputes, or reach the merits of Plaintiff's claims"), *citing Neal v. Air Drilling Assoc.*, Inc., 2015 WL 225432, *3 (M.D. Pa. Jan. 16, 2015); *Harrison v. Delguerico's Wrecking & Salvage, Inc.,* 2016 WL 826824, *2 (E.D. Pa. Mar. 2, 2016); *Mott v. Driveline Retail Merch., Inc*., 23 F. Supp. 3d 483, 486 (E.D. Pa. 2014); *In Re: Enterprise Rent- A-Car Wage & Hour Employment Practices Litig*., 2010 WL 3447783, *21 (W.D. Pa. Aug. 13, 2010); *Camesi v. Univ. of Pittsburgh Med. Ctr.,* 2009 WL 1361265, *3 (W.D. Pa. May 14, 2009), *clarified* 2009 WL 1733940 (W.D. Pa. June 17, 2009).

The obvious reason why factual disputes, merits issues and credibility determinations have no place in the conditional certification inquiry is that these matters can only be resolved at the final certification proceeding after the parties have completed merits discovery. *Karlo*, 849 F.3d 61 at 85; *Rosario v. First Student Mgmt. LLC*, 2017 WL 1092333, *4 (E.D. Pa. Mar. 23, 2017); *Verma,* 2016 WL 6962522 at *4; *Altnor v. Preferred Freezer Servs., Inc*., 197 F. Supp. 3d 746, 759 (E.D. Pa. 2016); *Hernandez v. Earth Care, Inc.,* 2016 WL 1461171, *1 (E.D. Pa. Apr. 13, 2016).

"Because conditional certification concerns merely the issuance of notice" – and not factual disputes, merits issues and credibility determinations – "courts should err in favor of providing

9

notice to employees." *Garcia v. Nunn*, 2016 WL 1169560, *3 (E.D. Pa. Mar. 25, 2016), *citing Craig*, 2009 U.S. Dist. LEXIS 114785 at *9 ("The burden in this preliminary certification is light because the risk of error is insignificant: should further discovery reveal that the named positions, or corresponding claims, are not substantially similar the Defendant will challenge the certification and the court will have the opportunity to deny final certification"); *Sabol*, 2010 U.S. Dist. LEXIS 47145 at *10 ("Presumably because of the threshold requirement's leniency, the initial determination usually results in conditional certification."); *Evans,* 2004 U.S. Dist. LEXIS 15716 at *6 ("Typically, the first step results in an automatic conditional certification because of the relatively light standard and minimal evidence").

   3. **Conditional Certification Is Warranted Here, Because Plaintiff Have Introduced Evidence Demonstrating That The Collective Members Were Affected In Similar Ways By The Challenged Policies And Practices**

This Court should allow the dissemination of notice, because all members of the FLSA Collective were subject to common conditions of employment, including:

- Similar job descriptions and requirements;

- Similar job-related training;

- Similar "Regular Full-Time," non-exempt employment classification;

- A similar pay scheme and work schedule (hourly pay for a scheduled 40-plus hour workweek);

- A similar entitlement to overtime wages, namely to receive one-and-one-half their regular rate for all time over 40;

- A similar policy requiring advance approval of a supervisor before overtime wages will be paid and threating disciplinary action against any employee who seeks overtime wages without prior approval;

- A similar policy dictating that only actual hours worked are eligible for overtime;

- A similar requirement mandating that the FLSA Collective members track

10

their daily work hours on the same ADP time clock system; and

- A similar payroll system (ADP).

Complaint at ¶¶ 1, 8, 14, 21-22, 35, 47 [Doc. 1]; Vertical Screen Employee Handbook at pp. 22, 24, 26 (Ex. D).

Further, Plaintiff has provided substantial evidence based on his personal experience across five years of employment at Vertical Screen, his familiarity with Defendant's policies and practices and his regular interaction with dozens of FLSA Collective members who were subject to the same terms and conditions of employment with respect to the claims pled in the Complaint. Garcia Dec. at ¶¶ 2-14 (Ex. B). Plaintiff has also provided a declaration from one of his co-workers, Julia Santana, that confirms the key facts underlying Plaintiff's claims and the commonality of these claims across the FLSA Collective members. Santana Dec. at ¶¶ 2-7 (Ex. C). This level of proof – particularly early in the litigation before any discovery has been taken – more than satisfies the proof "beyond pure speculation" standard.

More specifically, Plaintiff has offered proof beyond mere speculation that Defendant maintains common policies and practices that require all Researchers and Team Leaders to spend about 10 to 15 minutes per day waiting for other employees to log-out of the ADP system before they can log-in, waiting for the computer to load, waiting for the ADP system to load, addressing hardware and software problems that often require them to perform updates, reconfigure passwords and/or repeat the log-in process one or more times until their log-in is accepted, being unable to log-in and having to e-mail their supervisor to describe that day's log-in problems. Complaint at ¶¶ 8-9 [Doc. 1]; Garcia Dec. at ¶¶ 3-5 (Ex. B); Santana Dec. at ¶¶ 2-5 (Ex. C).

Plaintiff has offered proof beyond mere speculation that Defendant maintains common policies and practices that require department managers and supervisors to perform an overtime approval process to remove "unapproved" overtime hours, which typically results in a loss of one

to two hours of overtime pay per month. Complaint at ¶ 8 [Doc. 1]; Garcia Dec. at ¶¶ 6, 10-11 (Ex. B); Santana Dec. at ¶ 7 (Ex. C).

Plaintiff has offered proof beyond mere speculation that Defendant knew or should have known the FLSA Collective members routinely experienced these violations because he and other FLSA Collective members regularly communicated with their supervisors, department managers and the human resources department about problems with Defendant's log-in policies and procedures, problems with not being paid for time spent logging-in to Defendant's computer and timekeeping systems each day and problems with hours being "shaved" from their weekly work time. Complaint at ¶¶ 10-11 [Doc. 1]; Garcia Dec. at ¶¶ 8-9, 11-12 (Ex. B); Santana Dec. at ¶¶ 6-7 (Ex. C).

Plaintiff has offered proof beyond mere speculation that Defendant also knew or should have known the FLSA Collective members routinely experienced these violations because Defendant controls the timekeeping and payroll systems and procedures at issue; it has administrator access to the timekeeping system; it receives notifications about timekeeping system errors; it has access to timekeeping and e-mail system metadata (including personal identifying information) that show employees' failed log-in attempts and time spent resolving log-in issues; it provides Researchers and Team Leaders with training to address timekeeping log-in issues; it receives e-mails on the verticalscreen.com intranet relating to timekeeping log-in issues and complaints about receiving pay for fewer than all hours worked; and it receives frequent complaints from Researchers and Team Leaders about these issues. Garcia Dec. at ¶ 13 (Ex. B).

Plaintiff has offered proof beyond mere speculation that, despite having actual, contemporaneous knowledge of all these issues, Defendant did not undertake any serious effort to: track the time Researchers and Team Leaders spent logging-in to the ADP system, pay Researchers

and Team Leaders wages for this time, pay Researchers and Team Leaders at the legally-required rate for all of the overtime hours they actually worked, or address complaints the FLSA Collective members made about these issues. Complaint at ¶¶ 10-11 [Doc. 1]; Garcia Dec. at ¶¶ 8-9, 11-12 (Ex. B); Santana Dec. at ¶¶ 5, 7 (Ex. C).

Finally, whatever arguments Defendant ultimately raises against conditional certification will also likely have common application to Plaintiff and the FLSA Collective. As a result, Plaintiff is similarly-situated to FLSA Collective and conditional certification is plainly warranted.

### 4. Plaintiff's Proposed Notice and Dissemination Plan Will Permit The Accurate, Thorough And Cost-Effective Dissemination Of Information About This Lawsuit To The FLSA Collective

FLSA "opt-in" actions depend on "employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffman-LaRoche*, 493 U.S. at 170. If the Court approves this matter to proceed as a collective action, it will have "managerial responsibility to oversee the joinder of additional parties to ensure that the task is accomplished in an efficient and proper way." *Id.* at 170-71. Plaintiff's notice proposal meets the requirements for providing "accurate and timely" information to the Collective. *Id*.

Plaintiff's proposed FLSA Notice will inform the FLSA Collective about this litigation and help them make an informed decision about whether to opt-in. FLSA Notice (Ex. A). Plaintiff's Notice addresses topics including: why the FLSA Collective members received the Notice, what the lawsuit is about, the status of the case, who can join the case, how to join the case, the effect of joining or not joining the case and their legal representation if they join. *Id.* Plaintiff's proposed Notice is similar in form and substance to notices this Court has approved in several recent cases, including: *Donoghue v. Tesinc, LLC,* E.D. Pa. Case No. 16-cv-4742 (J.

Kearney); *Fiumano v. Metro Diner,* E.D. Pa. Case No. 17-cv-465 (J. Brody); *Galt v. Eagleville,* E.D. Pa. Case No. 15-cv-6851 (J. Rufe); *Gauzza v. Prospect Medical Holdings,* E.D. Pa. Case No. 17-cv-3599 (J. Beetlestone); *Rocha v. Gateway Funding Diversified Mortgage*, E.D. Pa. Case No. 15-cv-482 (J. Padova) and *Tompkins v. Farmers Group, Inc.*, E.D. Pa. Case No. 14-cv-3737 (J. Leeson).

If the Court authorizes the dissemination of FLSA notice, Plaintiff respectfully proposes that:

- Defendant should have seven days to send Plaintiff's counsel a computer-readable Excel file containing the full name, last-known mailing address and last-known e-mail address of all persons who have worked as a full-time, hourly-paid Vertical Screen Researcher or Team Leader during the three years preceding the date of the Court's Order. *Id.* [2]

- Promptly after receiving this information from Defendant, Plaintiff's Counsel should perform all necessary address searches and, thereafter, disseminate the Court-approved Notice to the FLSA Collective members by First-Class U.S. Mail and e-mail (attaching an electronic copy of the opt-in form) and perform all necessary re-delivery efforts;

- Plaintiff's Counsel may send one reminder mailing and up to two reminder e-mails to each potential opt-in Plaintiff during the opt-in period.[3]

---

[2] The names, mailing addresses and e-mail addresses of collective group members are all plainly discoverable, and courts routinely order discovery of mailing lists in FLSA collective actions. *See, e.g., Hoffman-LaRoche*, 493 U.S. at 170; *Bodnar v. Bank of Am., N.A.*, 2016 U.S. Dist. LEXIS 121506, *6 (E.D. Pa. Aug. 4, 2016) (approving distribution of notice by e-mail); *Korrow v. Aaron's Inc.*, 2015 U.S. Dist. LEXIS 160032, *31 (D.N.J. Nov. 30, 2015) (same); *Bland v. Calfrac Well Servs. Corp.,* No. 2:12-CV-01407, 2013 WL 4054594, *3 (W.D. Pa. Aug. 12, 2013) (same); *Chester ex rel. N.L.R.B. v. Grane Healthcare Co.*, 797 F. Supp. 2d 543, 550 (W.D. Pa.), *aff'd in part, remanded in part*, 666 F.3d 87 (3d Cir. 2011) (same).

[3] Such reminders have gained broad approval as a part of modern notice efforts and serve the dual goals of increasing awareness of the litigation among the collective while minimizing the burden and cost of litigation. *Acevedo v. BrightView Landscapes, LLC*, No. CV 3:13- 2529, 2017 WL 1062377 at *5 (M.D. Pa. Mar. 21, 2017) (approving reminder notice); *Schneck v. Lawrence D. Brudy & Assocs., Inc.*, No. CA 15-1058, 2016 WL 912299 at *2 (W.D. Pa. Mar. 10, 2016) (same); *Bland v. Pnc Bank, N.A.*, No. 15CV1042, 2015 WL 7587365 at *3 (W.D. Pa. Nov. 25, 2015) (same). *Gascho v. Glob. Fitness Holdings, LLC*, No. 2:11-CV-436, 2014 WL 1350509 at *7 (S.D.

- Defendant will post a copy of the Court-approved Notice in its headquarters in Warminster, PA in a conspicuous location where potential opt-in Plaintiffs are likely to view it.[4]

- The FLSA Collective will have 60 days from the notice mailing date to opt-in to this litigation.[5]

- Defendant will refrain from communicating with any potential opt-in Plaintiffs concerning this lawsuit until after expiration of the 60-day opt-in period, after which date Defendant shall refrain from communications with all opt-in Plaintiffs concerning this lawsuit.[6]

---

Ohio Apr. 4, 2014), *report and recommendation adopted*, No. 2:11-CV-00436, 2014 WL 3543819 (S.D. Ohio July 16, 2014), aff'd, 822 F.3d 269 (6th Cir. 2016) (approving e-mail dissemination of notice and reminder e-mail); *Lee v. Glob. Tel*Link Corp*., No. 215CV02495, 2017 WL 1338085 at *3 (C.D. Cal. Apr. 7, 2017) (approving reminder e-mail); *In re Sony PS3 "Other OS" Litig*., No. 10-CV-01811-YGR, 2017 WL 424716 at *4 (N.D. Cal. Jan. 31, 2017); *Boltinghouse v. Abbott* Labs., Inc., 196 F. Supp. 3d 838, 843 (N.D. Ill. 2016).

[4] *Harrison v. DelGuerico's Wrecking & Salvage, Inc.,* 305 F.R.D. 85, 89 (E.D. Pa. 2015) (approving posting of FLSA notice); *Thompson v. Peak Energy Servs. USA, Inc*., 2013 WL 5511319, *3 (W.D. Pa. Oct. 4, 2013) (ordering posting of FLSA notice "where it will be seen by current FLSA class members"); Pereira v. Foot Locker, Inc., 261 F.R.D. 60, 72 (E.D. Pa. 2009) (ordering posting of FLSA notice "in a conspicuous place for its Retail Employees to view").

[5] *Boyington v. Percheron Field Servs., LLC*, 2017 WL 1378328, *1 (W.D. Pa. Apr. 12, 2017) (approving 60-day opt-in period); *Hively v. Allis-Chalmers Energy, Inc*., 2013 WL 5936418, *2 (W.D. Pa. Nov. 5, 2013) (same); *Thompson v. Peak Energy Servs. USA, Inc*., 2013 WL 5511319, *3 (W.D. Pa. Oct. 4, 2013) (same).

[6] *Hoffman-La Roche,* 110 S. Ct. 482 (courts possess significant authority to oversee post-complaint communications with potential class members and should actively exercise this authority to ensure representative proceedings are fair and efficient); *Gulf Oil Co. v. Bernard*, 101 S. Ct. 89 (1981) (district courts have authority to supervise post-complaint communications with potential class members and an affirmative duty to ensure representative proceedings are conducted fairly, efficiently and without improper influence); *In re: Community Bank of Northern Virginia*, 418 F.3d 277 (3d Cir. 2005) (district courts must "take steps to safeguard class members from "'unauthorized [and] misleading communications from the parties or their counsel'"); *In re School Asbestos Litigation*, 842 F.2d 671 (3d Cir. 1988) (district court has duty and authority to exercise control over a representative action and enter appropriate orders governing the conduct of counsel and parties).

Together, the components of Plaintiff's proposed Notice and dissemination plan merit this Court's approval because they are thorough, fair and typical of efforts routinely approved in other FLSA actions in this Court.

## IV.  CONCLUSION

Because he has offered proof beyond mere speculation that his claims arise from an array of common policies and procedures, Plaintiff respectfully submits that his claims are appropriate for collective treatment.  As a result, Plaintiff asks the Court to enter his proposed Order granting conditional certification and providing the other relief described therein.

Respectfully submitted,

Dated: February 25, 2019

*/s/ David J. Cohen*
David J. Cohen
STEPHAN ZOURAS LLP
604 Spruce Street
Philadelphia, PA 19106
(215) 873-4836
dcohen@stephanzouras.com

James B. Zouras
STEPHAN ZOURAS LLP
100 North Riverside Plaza, Suite 2150
Chicago, IL 60606
(312) 233-1550
jzouras@stephanzouras.com

*Counsel for Plaintiff*