# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM GARCIA, for himself and all others similarly situated,<br>    Plaintiff,<br><br>        v.<br><br>VERTICAL SCREEN, INC.,<br>    Defendant. | CIVIL ACTION<br><br><br><br>NO. 18-4718 |

DuBois, J.                                                                                                          July 22, 2019

# M E M O R A N D U M

## I.      INTRODUCTION

This is a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.* Plaintiff was formerly employed as a Researcher by defendant Vertical Screen, Inc., and asserts claims individually and on behalf of similarly situated former and current Researchers and Team Leaders employed by defendant. Plaintiff alleges defendant violated the FLSA by (1) failing to pay Researchers and Team Leaders for the ten to fifteen minutes it took to log in to defendant's timekeeping system each work day and (2) shaving one to two unapproved overtime hours off Researchers' and Team Leaders' recorded work time each month.

Presently before the Court is Plaintiff's Motion for Order Authorizing Notice to Similarly Situated Persons under 29 U.S.C. § 216(b). The Court treats the motion as a motion for conditional certification of an opt-in FLSA collective action and the dissemination of opt-in class notice to "all persons who have worked as a full-time, hourly-paid Vertical Screen Researcher or Team Leader during the past three years," based on plaintiff's claims of unpaid log-in time and shaved overtime hours. For the reasons that follow, plaintiff's motion is granted in part and denied in part.

## II. BACKGROUND

Defendant Vertical Screen, Inc., is a "family" of four entities specializing in applicant screening and fingerprinting and identity services. Compl. ¶ 6. Defendant controls all "significant business functions" of the four entities, including setting policies and procedures. *Id.* Defendant employs approximately 900 hourly-paid Researchers and Team Leaders responsible for running pre-employment background checks on individuals applying for work with defendant's clients. *Id.* ¶ 5. Plaintiff William Garcia was employed as a full-time, hourly Researcher from August 2013 to August 2018. *Id.*; Pl. Mot., Ex. B, Pl. Decl. ("Pl. Decl.") ¶ 2.

Plaintiff alleges that defendant's policies require hourly-paid Researchers and Team Leaders to track their time through the ADP timekeeping system. Compl. ¶ 8. According to plaintiff, logging into the ADP system took about ten minutes each day because "hardware and software problems . . . often require[d] them to perform updates, reconfigure passwords, and/or repeat the log-in process one or more times until their log-in [was] accepted." *Id.* When problems with the system prevented logging in altogether, plaintiff states that defendant required Researchers and Team Leaders to spend an additional five minutes emailing their supervisors to "describe[e] their log-in problems and advis[e] they were at work." *See id.* The time stamp of this email would then serve as the start time for their work day. *Id.* Plaintiff claims that defendant did not pay wages for the ten to fifteen minutes it took to log in each day, resulting in about two to four hours of unpaid time each month. *See id.* ¶ 9. Plaintiff further asserts that he and other Researchers and Team Leaders informed their supervisors, department managers, and the human resources department about issues logging into the ADP system, but nothing was done to address the problem. *See id.* ¶ 10; Pl. Decl. ¶¶ 8–9.

In addition, defendant's policies required hourly-paid Researchers and Team Leaders to

get approval from a supervisor before working overtime. Pl. Reply 6; Pl. Mot., Ex. D, Vertical Screen Employee Handbook 2011 ("Employee Handbook"), at 26. Plaintiff avers that defendant's policies required department managers and supervisors to review Researchers' and Team Leaders' work hours weekly and remove "unapproved" overtime hours, for which no wages were paid. Pl. Mem. Supp. Mot. Notice ("Pl. Mem. Mot.") 4; *see* Compl. ¶ 8. Plaintiff maintains that this process resulted in about one to two overtime hours being cut from hourly-paid Researchers' and Team Leaders' pay each month. *See* Pl. Mem. Mot. 4; Compl. ¶ 9; Pl. Decl. ¶¶ 10, 12. Plaintiff states that he and other Researchers and Team Leaders spoke with supervisors, department managers, and the human resources department about hours being "shaved" from their weekly work time, but nothing was done to address the problem. *See* Comp. ¶ 11; Pl. Decl. ¶¶ 11–12.

On November 1, 2018, plaintiff filed the Complaint, alleging violations of the FLSA, alleging defendant (1) failed to pay wages for log-in time and (2) shaved unapproved overtime hours. On February 25, 2019, plaintiff filed Plaintiff's Motion for Order Authorizing Notice to Similarly Situated Persons Under 29 U.S.C. § 216(b) (Document No. 17), treated as a motion for conditional certification and approval of notice. Following an Initial Pretrial Conference, the Court issued a Scheduling Order for briefing the motion on February 27, 2019 (Document No. 18). On March 22, 2019, defendant responded to plaintiff's motion (Document No. 20), and on April 10, 2019, plaintiff filed a reply (Document No. 21).

On May 22, 2019, the Court conducted a telephone conference with the parties, through counsel, during which the Court stated that it was inclined to conditionally certify the class with respect to plaintiff's claim of unpaid log-in time, but not with respect to the claim of shaved overtime hours. Following the conference, at plaintiff's request, the Court issued an Order

requiring additional evidence with respect to the shaved overtime hours claim—at least one additional declaration—demonstrating, *inter* alia, that plaintiff is similarly-situated to other hourly-paid Researcher and Team Leaders (Document No. 22). On June 3, 2019, plaintiff filed supplemental briefing, including an additional declaration in support of his motion (Document No. 23). On June 19, 2019, defendant responded (Document No. 24), and that same day, plaintiff filed a reply (Document No. 25). The motion is thus ripe for decision.

## III.  LEGAL STANDARD

Employees may bring a collective action against an employer who they allege violated the FLSA subject to two requirements: the employees must (1) be "similarly situated," and (2) give written consent. 29 U.S.C. § 216(b).

Courts in the Third Circuit "follow a two-step process for deciding whether an action may properly proceed as a collective action under the FLSA." *Camesi v. Univ. of Pittsburgh Med. Ctr.*, 729 F.3d 239, 243 (3d Cir. 2013). At the first stage, conditional certification, the district court "makes a preliminary determination as to whether the named plaintiffs have made a 'modest factual showing' that the employees identified in their complaint are 'similarly situated.'" *Id.* (citing *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 536 (3d Cir. 2012)). Conditional certification "is only the district court's exercise of [its] discretionary power . . . to facilitate the sending of notice to potential class members . . . and is neither necessary nor sufficient for the existence of a representative action under FLSA." *Symczyk v. Genesis HealthCare Corp.*, 656 F.3d 189, 194 (3d Cir. 2011), *rev'd on other grounds*, 569 U.S. 66 (2013). At the second stage, the final certification stage, the burden on plaintiffs is heavier, and the court "makes a conclusive determination as to whether each plaintiff who has opted into the collective action is in fact similarly situated to the named plaintiff." *Id.* at 193. If plaintiffs

4

satisfy their burden at the second stage, "the case may proceed . . . as a collective action." *See id.*

This case is currently at the first stage—conditional certification. At this stage, the plaintiff "must produce some evidence, beyond pure speculation, of a factual nexus between the manner in which the employer's alleged policy affected [him] and the manner in which it affected other employees." *Id.* (internal quotation omitted). In other words, plaintiff cannot make a "modest factual showing" based "solely on allegations in the complaint; some factual support must be provided, such as in the form of affidavits, declarations, deposition testimony, or other documents." *Drummond v. Herr Foods Inc.*, No. 13-5991, 2015 WL 894329, at *2 (E.D. Pa. Mar. 2, 2015) (quoting *Anyere v. Wells Fargo Co.*, No. 09-2769, 2010 WL 1542180, at *2 (N.D. Ill. Apr. 12, 2010)). This standard is "fairly lenient." *Camesi*, 729 F.3d at 243. The Court does not evaluate the merits of a case when ruling on a motion for conditional certification. *Titchenell v. Apria Healthcare Inc.*, No. 11-563, 2012 WL 3731341, at *3 (E.D. Pa. Aug. 29, 2012).

## IV. DISCUSSION

### A. Conditional Certification

Plaintiff seeks conditional certification of a collective class consisting of "all persons who have worked as a full-time, hourly-paid Vertical Screen Researcher or Team Leader during the past three years." Pl. Mem. Mot. 1. Plaintiff asserts that the proposed class was subject to two policies by defendant that violate the FLSA: (1) failure to pay for time spent logging into defendant's timekeeping system and (2) shaving one to two unapproved overtime hours from employees' recorded work time each month. *Id.* at 10–12. For the reasons that follow, the Court concludes that plaintiff has made the requisite modest factual showing that the proposed collective class is similarly situated and, therefore, conditionally certifies the proposed class.

### *1. Unpaid Log-In Time*

Plaintiff asserts that defendant failed to pay wages for the ten to fifteen minutes per day that hourly-paid Researchers and Team Leaders spent logging into the ADP timekeeping system, which added up to roughly two to four hours per month. Pl. Mem. Mot. 3.

In support, plaintiff submits two declarations by full-time, hourly paid Researchers—himself and Julia Santana—as well as defendant's 2011 Employee Handbook. Santana and plaintiff aver that Researchers are all subject to the same log-in and timekeeping policies, which required them to log in to the ADP timekeeping system at the start of each work day to track their time. *See* Pl. Decl. ¶¶ 3–4; Pl. Mot., Ex. C, Santana Decl. ("Santana Decl.") ¶¶ 2–3. Defendant's Employee Handbook supports the uniformity of defendant's policy among hourly employees, providing, "The time records of all non-exempt or hourly employees are recorded daily by each employee through our time clocks." *See* Employee Handbook, at 26.

Plaintiff and Santana state that logging into the ADP system took about ten minutes each day due to "hardware and software problems," such as "waiting for other employees to log-out of the ADP system before I could log in, waiting for the computer to load, waiting for the ADP system to load, updating or reconfiguring my password, [and] experiencing a failed log-in and having to re-start the log-in process." *See* Pl. Decl. ¶¶ 4, 7; Santana Decl. ¶¶ 3, 5. The declarants explain that on days that they were unable to log-in entirely, it took an additional five minutes to follow defendant's policy of emailing their supervisors to describe the log-in problem they experienced that day and advise that they were at work. *See* Pl. Decl. ¶¶ 5, 7; Santana Decl. ¶¶ 4–5. They contend their supervisors would then use the time stamp of that email as their start time. *See* Pl. Decl. ¶ 5; Santana Decl. ¶ 4. Both declarants aver that defendant did not pay for the ten to fifteen minutes it took to log-in each day, which cost them two to four hours of

overtime pay each month. *See* Pl. Decl. ¶ 7; Santana Decl. ¶ 5.

Plaintiff and Santana state that they spoke to their supervisors, department managers, and defendant's human resources department about problems with defendant's log-in procedure and not being paid for log-in time. *See* Pl. Decl. ¶ 8; Santana Decl. ¶ 6. Plaintiff avers that other Researchers and Team Leaders did the same, and that he knew this because of his "regular interaction" with his coworkers. Pl. Decl. ¶ 9; Pl. Mem. Mot. 11. Both declarants maintain that nothing was done to resolve the problem. *See* Pl. Decl. ¶ 8; Santana Decl. ¶ 6.

Defendant argues that plaintiff failed to meet his burden of showing all hourly-paid Researchers and Team Leaders were subject to the same policies. *See* Def. Mem. Opp. Mot. 15. However, the Employee Handbook refers to all "hourly employees," not specific job titles, evidence that hourly-paid Researchers and Team Leaders are subject to the same timekeeping policies. *See* Employee Handbook, at 26. Defendant provides no evidence to the contrary. Moreover, the addition of Santana's declaration, describing her similar personal experiences with the log-in system, shows that plaintiff's averments go beyond "mere speculation." *See* Def. Mem. Opp. Mot. 15. Furthermore, plaintiff avers that he knows that hourly-paid Researchers and Team Leaders were subject to the same policies. Pl. Decl. ¶ 9; Pl. Mem. Mot. 11. Courts "routinely certif[y] conditional collective actions based on the plaintiff's affidavit declaring they have personal knowledge that other coworkers were subjected to similar employer practices." *See Viscomi v. Clubhouse Diner*, No. 13-4720, 2016 WL 1255713, at *5 (E.D. Pa. Mar. 31, 2016) (quoting *Guo Qing Wang v. H.B. Rest. Grp., Inc.*, No. 14-813, 2014 WL 5055813, at *4 (S.D.N.Y. Oct. 7, 2014)).

Next, defendant argues that neither plaintiff nor Santana provided specific examples of instances on which they experienced log-in issues and were not paid for that time. Def. Mem.

7

Opp. Mot. 17–18. The Court disagrees. Both plaintiff and Santana assert that it took roughly ten to fifteen minutes "per day" to log in and provided specific examples of the time-consuming issues they faced, such as "waiting for the computer to load" or "reconfiguring my password." Pl. Decl. ¶ 7; Santana Decl. ¶ 5. These specifics are sufficient to go beyond "pure speculation." *See Symczyk*, 656 F.3d at 193. The Court is also not persuaded by defendant's argument that Santana's declaration provides insufficient evidence, given her statement that while she worked for defendant, she "felt [she] was probably paid for all the hours [she] worked." *See* Def. Mem. Opp. Mot. 18. Significantly, the Santana statement referred to defendant's policy of shaving overtime hours, addressed *infra*, not its log-in policy.

Defendant next attempts to attack the merits of plaintiff's claim. First, defendant argues that the amount of time it took to log in was *de minimis* and not compensable. *See id.* at 15. In addition, defendant challenges that it had any policy of not compensating its employees for log-in time, when, in fact, it has a written policy of properly compensating its employees and a procedure in place through which employees can challenge perceived errors in their paychecks, which it contends plaintiff utilized on only three occasions. *See id.* at 16–17. The Court rejects these arguments on their face, as at the conditional certification stage, "the Court does not weigh the evidence, resolve factual disputes, or reach the merits of Plaintiff's claims." *See Holley v. Erickson Living*, No. 11-2444, 2012 WL 1835738, at *4 n.4 (E.D. Pa. May 21, 2012).

Finally, defendant argues that even if plaintiff met his burden in demonstrating a uniform policy, this matter is unsuitable for a collective action, because it will require an "individualized analysis" of each opt-in plaintiff's time stamps and of decisions by individual supervisors not to correct employees' hours. Def. Mem. Opp. Mot. 19–20. However, any determination that the "individualized circumstances of employees render the matter unsuitable for collective treatment

8

may be more appropriately reviewed during step two of the certification process." *Burkhart-Deal v. Citifinancial, Inc.*, No. 07-1747, 2010 WL 457127, at *3 (W.D. Pa. Feb. 4, 2010).

For these reasons, the Court concludes plaintiff has made the requisite modest factual showing that defendant's policies required all full-time, hourly-paid Researchers and Team Leaders to spend ten to fifteen minutes logging into its timekeeping system, for which they were not paid. The Court grants plaintiff's motion insofar as it seeks to conditionally certify a class with respect to the claim of unpaid log-in time.

### 2. Shaved Overtime Hours

Plaintiff claims that defendant had a policy of shaving one to two unapproved overtime hours from full-time, hourly Researchers' and Team Leaders' recorded work time each month. *See* Pl. Mem. Mot. 4.

In support, plaintiff submits three declarations by hourly-paid Researchers—himself, Santana, and Kristin Chirichiello—as well as defendant's Employee Handbook. The Handbook provides, "Prior approval of a supervisor . . . is required before any hourly employee works overtime. Non-exempt/hourly employees working overtime without approval will be subject to disciplinary action." *See* Employee Handbook, at 26. The Handbook does not contain a policy for seeking retroactive approval for overtime hours worked. *See* Chirichiello Decl. ¶ 6.

Chirichiello explains that in her experience, it was "often difficult, if not impossible, to get a supervisor's advance approval for overtime work because events that cause overtime work often happen when supervisors are not readily available, like during meal breaks or at the end of a shift." *See id.* ¶ 4. Additionally, Chirichiello avers that on some occasions she had to work overtime hours unexpectedly "because of my workload, system issues, a co-worker calling out sick, or other reasons," and on those occasions she could not get approval from a supervisor. *Id.*

9

¶ 7. Plaintiff and Chirichiello explain that department managers and supervisors would review Researchers' and Team Leaders' work time each week, and "shave" unapproved overtime hours from their weekly recorded work time. *See* Pl. Decl. ¶¶ 6, 10; Chirichiello Decl. ¶ 5. The declarants maintain that they, and other Researchers and/or Team Leaders, were thus not compensated for unapproved overtime hours, which added up to roughly one to two hours of overtime pay each month. *See* Pl. Mem. Mot. 4; Pl. Decl. ¶ 10; Santana Decl. ¶ 7; Chirichiello Decl. ¶¶ 5, 7; Pl. Reply 5–6. Moreover, both plaintiff and Chirichiello aver that Researchers and/or Team Leaders spoke to their department managers and supervisors about their unpaid overtime work, but nothing was done to resolve the problem. Pl. Decl. ¶¶ 11–12; Chirichiello Decl. ¶ 8.

First, for the reasons discussed *supra*, defendant's arguments addressing the merits of plaintiff's claim, such as the claim that plaintiff should have utilized defendant's Error in Pay policy, are inappropriate at this stage of the proceedings. *See* Def. Resp. Opp. Supp. Br. 4–5.

Next, defendant contends that Chirichiello's description of not being paid for unapproved overtime hours is "totally different" from the policy plaintiff describes in the Complaint and his declaration. *See* Def. Resp. Opp. Supp. Br. 1–2. The Court disagrees. Although the Complaint broadly states that defendant "regularly 'shaved' about one to two hours per month off his weekly work time," plaintiff's motion, declaration, and reply, describe the same policy as Chirichiello: removal of unapproved overtime hours from through managers' and supervisors' weekly review of hourly employees' work time. *See* Compl. ¶ 9; Pl. Mem. Mot. 4, 11–12; Pl. Decl. ¶ 6; Pl. Reply 5–6.

Defendant further argues that plaintiff has not provided evidence that the alleged policy "goes beyond specific circumstances personal to Plaintiff." *See* Def. Mem. Opp. Mot. 10–11.

Specifically, defendant challenges plaintiff's declarants, arguing that Santana's declaration is "weak" and "tentative[] speculat[ion]," and argues that plaintiff has not pointed to "any policy or procedure in writing." *See id.* at 9–10. Additionally, defendant maintains that plaintiff failed to assert specific examples of times that his, or another putative class member's, overtime hours were shaved. *See id.* at 9.

The Court agrees that Santana's declaration is weak. Even the strongest language of Santana's declaration is tenuous: "[L]ooking back at the time I worked for Vertical Screen and the wages it paid, *I think* my managers or supervisors *may have* used the review process to cut 1-2 overtime hours from my pay each month." Santana Decl. ¶ 7 (emphasis added). However, even without Santana's declaration, plaintiff has made a modest factual showing that defendant had a policy of shaving one to two unapproved overtime hours from hourly-paid Researchers' and Team Leaders' work time each month. The Employee Handbook, which applies to "all hourly employee[s]," provides that overtime hours must be approved and that employees who work unapproved overtime will be subject to disciplinary action. *See* Employee Handbook, at 26. Plaintiff and Chirichiello both aver knowledge that other Researchers and Team Leaders were subject to the same policies. *See* Pl. Decl. ¶¶ 3, 6; Chirichiello Decl. ¶¶ 3, 5; *see Viscomi*, 2016 WL 1255713, at *5 (explaining courts "routinely certify[] conditional collective actions" based on similar evidence). In addition, plaintiff and Chirichiello both state that they personally experienced overtime hours being shaved from their recorded work time, and Chirichiello described specific instances in which she had to work overtime without approval, such as a coworker calling in sick. *See* Pl. Decl. ¶ 10; Chirichiello Decl. ¶ 7. Thus, plaintiff has met his burden of showing the similar application of this policy to the proposed class.

Finally, defendant argues that even if plaintiff has shown that the alleged overtime hour-

shaving policy exists, this claim is unsuitable for collective action because "individual questions predominate." *See* Def. Mem. Opp. Mot. 12. Specifically, defendant contends that the time reductions were implemented by "at least 215" different managers and supervisors, so "there would be hundreds of time shaving policies, each individual to the discrete manager or supervisor." *Id.* at 14. For reasons stated *supra*, arguments that the "individualized circumstances" of potential opt-in plaintiffs make this matter unsuitable for collective treatment should be addressed at the second stage of the certification process. *See Burkhart-Deal*, 2010 WL 457127, at *3.

The Court thus grants plaintiff's motion insofar as it seeks to conditionally certify a class with respect to the claim of shaved overtime hours.

### 3. Overbreadth

Finally, defendant argues that the collective class plaintiff proposes is overbroad and includes employees "in different divisions with varied scheduled working hours and dissimilar managers and supervisors." *See* Def. Mem. Opp. Mot. 20–21. The Court has already concluded that plaintiff made a "modest factual showing" that the members of the proposed class—"[a]ll persons who have worked as a full-time, hourly-paid Vertical Screen Researcher or Team Leader during the past three years"—are similarly situated and subject to the same policies and practices by defendant. *See* Pl. Mem. Mot. 1. Defendant has not identified any key differences between the individuals included in this class. Moreover, concerns about the size and scope of an FLSA collective class are best addressed at the final certification stage. *See Titchenell v. Apria Healthcare Inc.*, No. 11-563, 2012 WL 3731341, at *9 (E.D. Pa. Aug. 29, 2012).

**B. Plaintiff's Proposed Class Notice and Consent Form**

The Court now turns to plaintiff's proposed Notice and Consent Form. The Supreme

Court has held that "district courts have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) . . . by facilitating notice to potential plaintiffs." *Hoffmann–La Roche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989). Defendant objects to plaintiff's proposed means of disseminating the Notice and Consent Form, as well as to the content of the Notice and Consent Form. The Court addresses each argument in turn.

### *1. Defendant's Objections to Dissemination of Notice*

Defendant challenges two of plaintiff's proposed means of dissemination: (1) requiring defendant to "conspicuously post" the Notice in its headquarters in Warminster, Pennsylvania, and (2) allowing plaintiff to send a reminder mailing and emails during the opt-in period. *See* Def. Mem. Opp. Mot. 22–23. First, defendant argues that posting the Notice in its headquarters is unnecessary given that it is "cooperating in the litigation process." *Id.* at 22. Second, defendant maintains that reminder communications "would suggest to potential plaintiffs that the Court is encouraging them to join the lawsuit." *See id.* at 23. Plaintiff maintains that both of these practices are routine in the Third Circuit. *See* Pl. Reply 16.

The Court agrees with plaintiff. "Courts in this Circuit regularly permit follow-up notices and posting of the notice at work sites of the defendant." *Archer v. Defs., Inc.*, No. 18-470, 2018 WL 5962470, at *4 (D. Del. Nov. 14, 2018). Defendant's objections to the means of disseminating the Notice and Consent Form are therefore overruled.

### *2. Defendant's Objections to the Content of the Notice and Consent Form*

Defendant also objects to the content of plaintiff's proposed Notice and Consent Form. Plaintiff consented to two of defendant's proposed amendments in his Reply and has thus agreed to amend the Notice to (1) advise opt-ins of their right to counsel under the section titled "Your Legal Representation If You Join" and (2) add a statement that plaintiff seeks wages for unpaid

13

time to the section titled "What Is the Lawsuit About?" *See* Def. Mem. Opp. Mot. 24–25; Pl. Reply 18–19. The Court addresses only defendant's remaining, disputed objections.

First, defendant argues that the Notice should advise opt-in plaintiffs that they may be required to attend depositions and testify at trial. Def. Mem. Opp. Mot. 23. The proposed Notice already informs potential plaintiffs that if they opt in, they "may be required to provide Defendant with documents, information, or testimony relating to your claim." *See* Pl. Mot., Notice of Lawsuit ("Notice"), at 2. This provision sufficiently informs potential plaintiffs of their potential obligations in the case. Defendant's objection is overruled on this ground.

Second, defendant argues that the Notice should include a warning that opt-in plaintiffs' employee and payroll records may become publicly accessible during the litigation. Def. Mem. Opp. Mot. 24. The Court concludes that this warning would unnecessarily run the risk of chilling opt-in participation. If concerns about the release of private information arise during the litigation, plaintiffs' information can be protected through other means. This objection is overruled.

Third, defendant argues that the Notice should also warn that if plaintiffs do not prevail in the case, "court costs and expenses may possibly be assessed against you." *Id.* at 23–24. This warning is unwarranted, given plaintiff's averment that plaintiff's counsel has agreed to indemnify plaintiffs against payment of costs. *See* Pl. Reply 17. This objection is overruled.

Fourth, defendant argues that the Notice should "advise potential plaintiffs of the amount of fees that will be deducted from their potential recovery if they choose to opt-in and be represented by Plaintiff's Counsel." *See* Def. Mem. Opp. Mot. 24. Plaintiff maintains that there is no basis for mentioning a percentage counsel fee in the Notice, because counsel does not have a fixed-percentage fee agreement with plaintiff, so his fee has not been established. Pl. Reply

14

18–19. The Court agrees that the Notice need not mention a fixed percentage fee in the absence of a fixed fee agreement. However, the Notice should state that if the opt-in plaintiffs are successful, counsel's contingency fee will be paid from their recovery. The proposed Notice states, "These attorneys have taken this case on a contingency basis meaning that, if this lawsuit results in a payment to the Class, they will ask the Court to approve a fee for their work and reimbursement of their case-related costs." *See* Notice, at 1. Defendant's objection is sustained in part. The Notice shall be amended to state that counsel's fee and reimbursement of costs will be paid from plaintiffs' recovery.

Fifth, defendant argues that the description of plaintiff's log-in time claim included in the Notice should be amended to add, "and by refusing to pay Researchers and Team Leaders for any such time they worked." *See* Def. Mem. Opp. Mot. 25. The Court agrees. The Notice currently states that plaintiff alleges defendant violated the FLSA by requiring Researchers and Team Leaders to spend ten to fifteen minutes logging into the timekeeping system but not that employees were not paid for that time. *See* Notice, at 1. Defendant's objection on this issue is sustained.

Relatedly, the Court notes that plaintiff's description of the shaving overtime hours claim lacks relevant context. Currently, the Notice states that defendant violated the FLSA by "[a]llowing department managers and/or supervisors to 'shave' one to two hours per month off Researchers' and Team Leaders' recorded work time to reduce the Company's labor costs." Notice, at 1. This description should be supplemented to clarify that the hours were shaved through defendant's policy of prohibiting unapproved overtime hours and removing those hours from the employees' recorded work time.

Sixth, defendant contends that the following statement should be added to the final

15

paragraph of the section titled "What is the Lawsuit About?": "Plaintiff's allegations are contested and have not been adjudicated in Plaintiff's favor." *See* Def. Mem. Opp. Mot. 25. This addition is unnecessary. The Notice already provides that "Defendant denies that it has committed the violations described above" and "claims that its policies and procedures comply with the law," as well as that "The Court has taken no position on the merits of Plaintiff's claims or Defendant's defenses." *See* Notice, at 1–2. Defendant's objection on this point is overruled.

Seventh, defendant argues that the following statement should be stricken from the Consent Form: "If this case does not proceed collectively, then I also consent to join any subsequent action to assert these claims." *See* Def. Mem. Opp. Mot. 25. Defendant argues this statement is "premature" and contemplates future legal action to which a plaintiff should not be required to consent. *Id.* Plaintiff maintains that requiring potential opt-in plaintiffs to consent now to a subsequent action is efficient and protects their rights "against a future decertification ruling, expiration of their limitations period, . . . being left without counsel or a forum to pursue their claim," and the "diminution or loss" of their claims. *See* Pl. Reply 20. District courts are divided on whether requiring consent to subsequent actions is beneficial. *Compare Clincy v. Galardi S. Enterprises, Inc.*, No. 09-2082, 2010 WL 966639, at *7 (N.D. Ga. Mar. 12, 2010) (approving similar language), *with Burch v. Qwest Communs. Int'l, Inc.*, 500 F. Supp. 2d 1181, 1191 (D. Minn. 2007) (concluding similar language was "not necessary and is confusing"). The Court agrees with those district courts that have determined this language is confusing. Accordingly, defendant's objection on this issue is sustained, and the disputed language shall be removed from the Notice.

Eighth, defendant argues that there is no basis for ordering defendant to "refrain from communicating" with potential opt-in plaintiffs, and, after the opt-in period, plaintiffs. *See* Def.

16

Mem. Opp. Mot. 25.  In support, defendant cites First Amendment concerns, argues that no rule requires it, and maintains that any fear that defense counsel may overreach is unsubstantiated. *Id.* at 25–26.  Moreover, defendant contends that the majority of federal courts have held that a "'defendant in a § 216(b) action is not categorically forbidden from communicating with prospective opt-in plaintiffs.'"  *Bobryk v. Durand Glass Mfg. Co.*, No. 12-5360, 2013 WL 5574504, at *3 (D.N.J. Oct. 9, 2013) (quoting *Longcrier v. HL-A Co.*, 595 F. Supp. 2d 1218, 1225 (S.D. Ala. 2008)).  However, this case involves more than just an FLSA collective class claim: plaintiff also asserts a class action claim under Federal Rule of Civil Procedure 23.  *See* Compl. ¶ 17.  Where a plaintiff pleads both FLSA collective and Rule 23 class claims, class members are treated as represented parties until a certification decision is made, meaning opposing counsel may not communicate with them.  *See Weller v. Dollar Gen. Corp.*, No. 17-2292, 2019 WL 1045960, at *2 (E.D. Pa. Mar. 4, 2019).  Because the potential opt-in plaintiffs are also putative class members, defense counsel is not permitted to contact them.  Defendant's objection on this issue is overruled.

Finally, defendant argues that the Notice should include defense counsel's contact information because it includes counsel for plaintiff's contact information.  *See* Def. Mem. Opp. Mot. 24.  The Court sees no benefit in providing potential opt-in plaintiffs with defendant's contact information, particularly in light of the Court's determination that defense counsel is not permitted to reach out to potential opt-in plaintiffs.  Defendant's objection regarding contact information is overruled.

Within seven days of the issuance of this Memorandum and Order, the parties, through counsel, shall submit to the Court an agreed-upon Notice and Consent Form that is compliant in all respects with this Memorandum and accompanying Order.  The Notice shall provide for a

sixty-day period during which the noticed individuals may opt in to the collective action.

## V. CONCLUSION

The Court grants plaintiff's motion insofar as it seeks conditional certification of a collective class of "all persons who have worked as full-time, hourly-paid Researchers or Team Leaders for defendant during the past three years," based on plaintiff's claims of unpaid log-in time and shaved overtime hours. Stephan Zouras LLP is appointed to serve as class counsel.

Within seven days of the issuance of this Memorandum and Order, the parties, through counsel, shall submit to the Court an agreed-upon Notice and Consent Form that is compliant in all respects with this Memorandum and accompanying Order. The Notice shall provide for a sixty-day period during which the noticed individuals may opt in to the collective action. To the extent that plaintiff's proposed Notice differs from that approved in this Memorandum, plaintiff's motion is denied.

Additionally, within seven days defendant shall produce to plaintiff a computer-readable Excel file containing the full names, last-known mailing addresses, and last-known e-mail addresses of all potential opt-in plaintiffs. Promptly after receiving this information, class counsel shall perform all necessary address searches and, thereafter, disseminate the Court-approved Notice and Consent Form to the potential opt-in plaintiffs by First-Class U.S. Mail and e-mail and perform all necessary re-delivery efforts. Class counsel may send one reminder mailing and up to two reminder e-mails to each potential opt-in plaintiff during the opt-in period.

Defendant shall post the Notice in its headquarters in Warminster, Pennsylvania, in a conspicuous location where potential opt-in plaintiffs are likely to view it. Defendant shall refrain from communicating with potential opt-in plaintiffs concerning this lawsuit until after

expiration of the sixty-day notice period, after which date defendant shall refrain from communicating with all opt-in plaintiffs concerning this lawsuit for the duration of the case.

At the conclusion of the notice period, the parties, through counsel, shall jointly report to the Court regarding the number of opt-in class members.

An appropriate Order follows.