**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| **WILLIAM GARCIA,** | ) | |
| **for himself and all others similarly situated,** | ) | **Case No. 2:18-cv-04718-JD** |
| **Plaintiff,** | ) | |
| **v.** | ) | |
| | ) | |
| **VERTICAL SCREEN, INC.,** | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' RULE 23 CLASS / FINAL FLSA CERTIFICATION MOTION**

Plaintiffs respectfully submit this Memorandum in support of their Motion for Rule 23 Class Certification and Final FLSA Certification.

## I.       INTRODUCTION

Named Plaintiff William Garcia is joined in this litigation by 66 Opt-In Plaintiffs who have worked for Vertical Screen, Inc. ("Defendant") as a full-time, hourly-paid Researcher or Team Leader in Pennsylvania.[1]   As the evidence plainly reveals, Defendant has uniformly deprived Plaintiffs – and everyone else who has worked for Vertical Screen as a full-time, hourly-paid Researcher or Team Leader in Pennsylvania – of earned wages in violation of the Pennsylvania Minimum Wage Act of 1968, 43 P.S. §§ 333.101 *et seq.* ("PMWA") in two ways: 1) by failing to pay them for recorded time spent on required activities at the beginning of each shift, and 2) by failing to pay all wages due for every overtime hour worked.  *See* Complaint, ¶¶7-11, 47 [Doc. 1].

Plaintiffs seek Fed. R. Civ. P. 23 and final FLSA certification of a Class defined to include: "All people who have worked as a full-time, hourly-paid Vertical Screen Researcher or Team

---

[1] *See* Notice of Consent Forms [Docs. 31, 33-45]; Notice of Withdrawal (Panofsky) [Doc. 52].

Leader in Pennsylvania since November 1, 2015." *Id.  See Dalanas v. Uni-Kem Chemicals, Inc.,* 2019 WL 3934801, *2 (E.D. Pa. Aug. 20, 2019), *citing* 43 Pa. C. S. § 260.9a(g) (applying a mandatory three-year limitations period to PMWA claims).  As demonstrated by the abundant record evidence discussed below, the people who meet this definition satisfy the criteria established by Fed. R. Civ. P. 23, meaning they possess common claims that are appropriate for class-wide resolution.[2]

## II.    COMMON, MATERIAL FACTS SUPPORTING CLASS CERTIFICATION

Named Plaintiff William Garcia worked for Defendant in Pennsylvania as a full-time, hourly Researcher from August 2013 to August 2018.  Complaint at ¶¶ 5, 7 [Doc. 1].  Mr. Garcia filed the Complaint in this matter on November 1, 2018.  *See* Complaint [Doc. 1].

In November 2019, Mr. Garcia answered written discovery requests.  *See* Plaintiff's Interrogatory Responses (Ex. 1).  Mr. Garcia's Interrogatory Responses established that:

- he worked as a full-time, hourly Researcher and Team Leader in Pennsylvania, running criminal research requests and assisting Defendant's Trainers and Coordinators in overseeing other Researchers;

- he was entitled to receive an hourly wage of approximately $13.50 per hour for up to 40 hours of work each week and an overtime premium rate of approximately $20.00 for all hours worked over 40 hours per week;

- he was typically scheduled to work five days per week (Monday through Friday) from 5:00 AM to 1:00 PM (40 hours per week);

- he typically worked five days per week (Monday through Friday) from 2:00 AM to 1:00 PM (55 hours) plus another 5 hours many Saturdays (60 hours per week);

- he was paid according to time entries he made in the ADP timekeeping system on the computer at his work station and could verbally ask his Supervisors to change his time records, but did not

---

[2] This Court conditionally-certified Plaintiffs' claim under the Fair Labor Standards Act of 1938 to proceed on a collective basis on July 24, 2019.  *See* Memorandum and Order [Docs. 26-27].

have access to any system or procedure to change his time entries or seek payment for work time not recorded on the ADP system;

- he was typically paid his regular rate for up to 40 hours of work each week, but was not paid any wages for time spent at work before logging-in to the ADP system (including time spent waiting for other employees to log-out of the ADP system, waiting for his computer to load, waiting for the ADP system to load, updating or reconfiguring his password, experiencing failed log-ins and having to re-start the log-in process, being unable to log-in and e-mailing his supervisor to describe these issues) or for his "unapproved" overtime hours;

- he regularly communicated with his Supervisors, Managers and the H.R. Department about problems with Defendant's log-in policies and procedures, including that his time was not being properly tracked or paid almost every day;

- Supervisors and Managers typically offered to look into his complaints, blamed these problems on Defendant's computers or systems, explained "this is how the Company works" and ultimately did nothing to address his complaints or fix these problems; and

- he identified by name 58 Vertical Screen Researchers, 30 Managers and Supervisors and seven Human Resources, Payroll, Scheduling and Timekeeping employees who were familiar with the time and pay issues he experienced, and about which he regularly complained.

*See* Named Plaintiffs' Interrogatory Responses 1, 3-5, 9, 11-12, 14, 17 (Ex. 1).

In April 2020, Defendant began a "rolling" production of documents that demonstrated the similarity of Plaintiffs' work conditions, including:

- the Vertical Screen Employee Handbook, a common statement of terms and conditions of employment that Defendant provided to every employee upon hire, *see* Employee Handbook (Ex. 2);

- job descriptions for various Researcher positions, providing materially identical qualifications, essential and non-essential job functions, skill requirements and training requirements for each employee, *see* Researcher Job Descriptions (Ex. 3);

- seating charts for Defendant's Headquarters (251 Veterans Way, Warminster, PA 18974) and the "Building 5" and "Building 10" annexes located 0.3 miles away (720 Johnsville Blvd., Unit 5 and

Unit 10, Warminster, PA 18974), *see* Seating Charts (Ex. 4);

- identical instructions to register for access to Defendant's ADP timekeeping system, manage their account, request PTO and enter a time punch, *see* ADP Registration (Ex. 5);

- identical materials used to train Vertical Screen Managers on using the ADP E-Time program and its various functions, including accessing time cards, fixing missed punches and making overtime adjustments, *see* E-Time Work Instructions (Ex. 6);

- identical materials used to train Vertical Screen Managers on using the ADP E-Time / Quick Timestamp program and its various functions, including viewing timecards, editing time punches and fixing punch issues, *see* E-Time Manager Guide (Ex. 7); and

- identical materials used to train Vertical Screen Managers on using the ADP E-Time / Quick Timestamp program to process payroll, including running time reports, reviewing manager time approvals adjusting employees' work time, editing time punches and exporting time files for payroll, *see* E-Time Manager Guide (Ex. 8).

Defendant's production also included documents revealing that the Schneider card readers and Iris ID retina scanners used to secure its premises and track its employees' movements create contemporaneous time records for its employees running parallel to the ADP records it used for payroll purposes. *See* Allen, Garcia and Lemerise Continuum Access reports (Ex. 9-11).[3]

---

[3] These records are significant for two reasons. First, they show that Plaintiffs routinely performed work-related activities before their daily ADP login ("pre-ADP login-in time") that Defendant tracked and failed to pay. *Compare* Allen July 22, 2018 Continuum Access report (showing gate access at 12:09:33 p.m., badge swipe at 12:14:31 p.m. and iris scan at 12:14:50 p.m.) *with* Allen July 22, 2018 Time Detail (showing ADP log-in for payroll purposes at 12:21:00 p.m.) (Ex. 9) *and compare* Lemerise June 4, 2018 Continuum Access report (gate access at 6:08:07 a.m., three badge swipes between 6:10:46 a.m. and 6:10:56 a.m. and iris scan at 6:11:23 a.m.) *with* Lemerise June 4, 2018 Time Detail (showing ADP log-in for payroll purposes at 6:13:00 a.m.) (Ex. 10). Second, these records raise common questions about the reliability of Defendant's timekeeping practices and systems because the clocks in Defendant's card readers and retina scanners were not synchronized with the clock in the ADP system. *Compare* Allen July 23, 2018 Time Detail *with* July 23, 2018 Continuum Access reports (showing ADP log-in completed at her work station at 8:09:00 a.m., 15 seconds *before* her badge swipe outside the building at 8:09:15 a.m.) (Ex. 9) *and compare* Garcia July 17, 2018 Time Detail *with* July 17, 2018 Continuum Access reports (showing ADP log-in completed at his work station at 11:25:00 a.m., 33 seconds *before* his badge swipe outside the building at 11:24:33 a.m.) (Ex. 11). While R.23 class certification and FLSA final

4

Beginning in April 2020, a dozen individual Plaintiffs served Defendant with written Interrogatory Responses echoing Mr. Garcia's experiences and supporting his allegations about unpaid pre-shift and overtime work, namely:

- they were entitled to receive an hourly wage for up to 40 hours of work each week and were supposed to receive an overtime premium rate for all hours worked over 40 per week, *see* Allen Int. Resp., ¶4 (Ex. 12); Autrey Int. Resp., ¶4 (Ex. 13); Calhoun Int. Resp., ¶4 (Ex. 14); Capaccio Int. Resp., ¶4 (Ex. 15); Hawes Int. Resp., ¶4 (Ex. 16); Johns Int. Resp., ¶4 (Ex. 17); Kosma Int. Resp., ¶4 (Ex. 18); Lemerise Int. Resp., ¶4 (Ex. 19); Serota Int. Resp., ¶4 (Ex. 20); Shackelford Int. Resp., ¶4 (Ex. 21); Simmons Int. Resp., ¶4 (Ex. 22); Simon Int. Resp., ¶4 (Ex. 23);

- they were generally scheduled to work an eight-hour shift five days per week (40 hours), but actually wound up working many more hours per week, *see* Allen Int. Resp., ¶10 (44-56 hours per week) (Ex. 12); Autrey Int. Resp., ¶10 (70 hours per week) (Ex. 13); Calhoun Int. Resp., ¶10 (46-47 hours per week) (Ex. 14); Capaccio Int. Resp., ¶10 (42-44 hours per week) (Ex. 15); Hawes Int. Resp., ¶10 (45 hours per week) (Ex. 16); Johns Int. Resp., ¶10 (44 hours per week) (Ex. 17); Kosma Int. Resp., ¶10 (42 hours per week) (Ex. 18); Lemerise Int. Resp., ¶10 (48-51 hours per week) (Ex. 19); Serota Int. Resp., ¶10 and Errata Sheet, p.2 (43-44 hours per week) (Ex. 20); Shackelford Int. Resp., ¶10 (42-43 hours per week) (Ex. 21); Simmons Int. Resp., ¶10 (45-48 hours per week) (Ex. 22); Simon Int. Resp., ¶10 (50-60 hours per week) (Ex. 23);

- they were required to record their work time by clocking-in and -out of the ADP timekeeping system on Defendant's computers and were required to verbally ask Supervisors or Managers to correct their time entries as needed, but there was no formal system or procedure to request payment for work not recorded by the ADP system, record the requests submitted to Supervisors or Managers, or confirm that time changes were made as requested, *see* Allen Int. Resp., ¶17 (Ex. 12); Autrey Int. Resp., ¶17 (Ex. 13); Calhoun Int. Resp., ¶17(Ex. 14); Capaccio Int. Resp., ¶17 (Ex. 15); Hawes Int. Resp., ¶17 (Ex. 16); Johns

---

certification inquiries often "overlap" with the merits of Plaintiffs' claims, a district court may not attempt to resolve the merits of a plaintiff's claim at the class certification stage. *Kelly v. RealPage, Inc.*, 2020 WL 7479620, *3 (E.D. Pa. Dec. 18, 2020), *recons. den.*, 2021 WL 37722 (E.D. Pa. Jan. 5, 2021), *citing Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013); *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 318 (3d Cir. 2008) ("the Court should only engage in this overlapping analysis to the extent necessary to resolve the class certification motion, and no more"). Thus, Plaintiffs do not reference these issues to prove the merit of their claims or their entitlement to damages, but to satisfy the commonality and typicality prongs of Rule 23(a). *See* Section IV, below.

Int. Resp., ¶17 (Ex. 17); Kosma Int. Resp., ¶17 (Ex. 18); Lemerise Int. Resp., ¶17 (Ex. 19); Serota Int. Resp., ¶17 (Ex. 20); Shackelford Int. Resp., ¶17 (Ex. 21); Simmons Int. Resp., ¶17 (Ex. 22); Simon Int. Resp., ¶17 (Ex. 23);

- they were generally paid their regular rate for up to 40 hours of work each week plus a time-and-a-half overtime rate for certain "approved" overtime hours under limited circumstances, but were usually paid for fewer hours than they actually worked because they were not paid for time spent at work before logging-in to the ADP system, or for all of the ("unapproved") overtime hours they worked, *see* Allen Int. Resp., ¶¶11, 13, 17 (Ex. 12); Autrey Int. Resp., ¶11, 13, 17 (Ex. 13); Calhoun Int. Resp., ¶¶11, 13, 17 (Ex. 14); Capaccio Int. Resp., ¶¶ 11, 13, 17 (Ex. 15); Hawes Int. Resp., ¶¶ 11, 13, 17 (Ex. 16); Johns Int. Resp., ¶¶ 11, 13, 17 (Ex. 17); Kosma Int. Resp., ¶¶ 11, 13, 17 (Ex. 18); Lemerise Int. Resp., ¶¶11, 13, 17 (Ex. 19); Serota Int. Resp., ¶¶11, 13, 17 (Ex. 20); Shackelford Int. Resp., ¶¶11, 13, 17 (Ex. 21); Simmons Int. Resp., ¶¶11, 13, 17 (Ex. 22); Simon Int. Resp., ¶¶11, 13, 17 (Ex. 23);

- shortly after starting work, they saw their pay looked about the same regardless of how many hours they worked, suspected they were not being paid for all of their work, spoke to other Vertical Screen Researchers about this problem and complained, saw other people complaining and heard about other people complaining to Managers about not being paid for all their work time, *see* Allen Int. Resp., ¶¶ 4, 8 (Ex. 12); Autrey Int. Resp., ¶¶4, 8 (Ex. 13); Calhoun Int. Resp., ¶¶ 4, 8 (Ex. 14); Capaccio Int. Resp., ¶¶4, 8 (Ex. 15); Hawes Int. Resp., ¶4, 8 (Ex. 16); Johns Int. Resp., ¶¶4, 8 (Ex. 17); Kosma Int. Resp., ¶¶ 4, 8 (Ex. 18); Lemerise Int. Resp., ¶¶4, 8 (Ex. 19); Serota Int. Resp., ¶¶4, 8 (Ex. 20); Shackelford Int. Resp., ¶¶4, 8 (Ex. 21); Simmons Int. Resp., ¶¶4, 8 (Ex. 22); Simon Int. Resp., ¶¶4, 8 (Ex. 23);

- Defendant's Supervisors and Managers would offer to look into these complaints, blame time and pay problems on Defendant's computers or systems, explain "this is how the Company works" and ultimately did nothing to address these complaints or fix these problems, *see* Allen Int. Resp., ¶8 (Ex. 12); Autrey Int. Resp., ¶8 (Ex. 13); Calhoun Int. Resp., ¶8 (Ex. 14); Capaccio Int. Resp., ¶* (Ex. 15); Hawes Int. Resp., ¶8 (Ex. 16); Johns Int. Resp., ¶8 (Ex. 17); Kosma Int. Resp., ¶8 (Ex. 18); Lemerise Int. Resp., ¶8 (Ex. 19); Serota Int. Resp., ¶8 (Ex. 20); Shackelford Int. Resp., ¶8 (Ex. 21); Simmons Int. Resp., ¶8 (Ex. 22); Simon Int. Resp., ¶8 (Ex. 23);

- they believe they have claims similar to William Garcia's because he had the same job, worked under the same policies, received the same training, was not paid for any of the time he spent at work before logging-in to the ADP system and was not paid for "unapproved"

6

overtime hours he actually worked, just like them, *see* Allen Int. Resp., ¶7 (Ex. 12); Autrey Int. Resp., ¶7 (Ex. 13); Calhoun Int. Resp., ¶7 (Ex. 14); Capaccio Int. Resp., ¶7 (Ex. 15); Hawes Int. Resp., ¶7 (Ex. 16); Johns Int. Resp., ¶7 (Ex. 17); Kosma Int. Resp., ¶7 (Ex. 18); Lemerise Int. Resp., ¶7 (Ex. 19); Serota Int. Resp., ¶7 (Ex. 20); Shackelford Int. Resp., ¶7 (Ex. 21); Simmons Int. Resp., ¶7 (Ex. 22); Simon Int. Resp., ¶7 (Ex. 23).

Beginning in September 2020, Defendant deposed nine Plaintiffs about their work at Vertical Screen and their unpaid time claims.  Testimony elicited at these depositions reveals important common facts and experiences supporting class certification, including:

- Vertical Screen did not pay its employees for time they spent each day between swiping their ID badge at the card reader outside the entry door and completing their ADP log-in, including: swiping their ID badge at the entrance door, opening the entrance door and proceeding into the vestibule, scanning their eye at the retina scanner in the vestibule, opening the interior entry door, travelling from the vestibule to their work station, waiting for any workers from the prior shift to complete their work, positioning themselves at their work station, turning on their computer, waiting for it to load, logging-in to their computer, opening the ADP E-Time program and waiting for it to load, logging-in to ADP Quick Timestamp and dealing with any delays, issues, or problems that occurred at any stage of this procedure– which generated their daily start time for Defendant's payroll purposes, *see* Allen Dep Tr., p.32, l.16-p.38, l.22, p.70, l.11-p.97, l.19, p.187, l.6-p.188, l.4 (Ex. 24); Garcia Dep. Tr. p.17, l.12-p.29, l.16, p.42, l.20-p.49, l.7, p.55, l.19-p.62, l.16, p.268, l.15-p.272, l.9 (Ex. 25); Hawes Dep Tr., p.36, l.11-p.44, l.23, p.109, l.8-p.188, l.4 (Ex. 26); Johns Dep. Tr., p.17, l.1-p.40, l.6, p.51, l.1-p.61, l.3, p.133, l.17-p.135, l.7, p.140, l.8-p.141, l.3 (Ex. 27); Lemerise Dep. Tr. 1 p.41, l.17-p.53, l.11, p.69, l.19-p.73, l.23, Lemerise Dep. Tr. 2 p.39, l.23-p.40, l.18 (Ex. 28); Serota Dep. Tr., p.19, l.16-p.21, l.2, p.43, l.11-p.57, l.15, p.118, l.5-p.119, l.21, p.141, l.15-p.146, l.20 and Errata Sheet (Ex. 29); Shackelford Dep. Tr. p.13, l.14-p.24, l.5, p.71, l.12-p.72, l.7 (Ex. 30); Simmons Dep. Tr. p.38, l.10-p.52, l.19 (Ex. 31); Simon Dep. Tr. p.127, l.5-p.128, l.16 (Ex. 32).

- Vertical Screen allowed its employees to work over 40 hours per week and – both by failing to record all the work they performed and cutting, deleting, or shaving their recorded work time – avoided paying them overtime premium wages, *see* Allen Dep Tr., p.41, l.10-p.42, l.13, p.69, l.17-p.71, l.14, p.148, l.5-149, l.24, p.188, l.13-p.191, l.2 (Ex. 24); Garcia Dep. Tr. p.268, l.15-p.290, l.6 (Ex. 25);

Hawes Dep Tr., p.43, l.18-p.46, l.12, p.68, l.8-p.70, l.7, p.106, l.1-5, p.109, l.17-p.110, l.2 (Ex. 26); Johns Dep. Tr., p.17, l.1-p.40, l.6, p.65, l.1-p.70, l.8, p.78, l.8-p.79, l.12, p.100, l.1-16, p.136, l.15-p.138, l.23 (Ex. 27); Lemerise Dep. Tr. 1 p.90, l.7-p.94, l.6, Lemerise Dep. Tr. 2 p.40, l.19-p.42, l.24 (Ex. 28); Serota Dep. Tr., p.19, l.16-p.21, l.2 (Ex. 29); Shackelford Dep. Tr. p.72, l.8-p.73, l.12 (Ex. 30); Simmons Dep. Tr. p.61, l.5-p.66, l.19, p.144, l12-p.145, l.6 (Ex. 31); Simon Dep. Tr. p.65, l.21-p.68, l.15, p.81, l.25-p.86, l.2, p.128, l.17-p.130, l.15 (Ex. 32).

- Plaintiffs routinely complained to each-other, their Supervisors and Managers about not being properly paid for all the time they worked, *see* Allen Dep Tr., p.38, l.23-p.41, l.9, p.141, l.4-p.144, l.5 (Ex. 24); Garcia Dep. Tr. p.70, l.14-p.74, l.5, p.206, l.7-p.208, l.6, p.255, l.6-p.256, l.10, p.281, l.7-p.290, l.6 (Ex. 25); Johns Dep. Tr., p.18, l.23-p.21, l.8, p.107, l.9-p.111, l.9, p.121, l.17-p.125, l.20, p.138, l.24-p.139, l.19 (Ex. 27); Lemerise Dep. Tr. 1 p.16, l.24-p.19, l.11, p.41, l.17-p.44, l.4, p.62, l.12-p.69, l.1, p.73, l.16-p.74, l.20, p.86, l.4-p.88, l.11, Lemerise Dep. Tr. 2 p.7, l.1-p.15, l.24, p.18, l.18-p.21, l.13, p.37, l.16-p.39, l.14, (Ex. 28); Simmons Dep. Tr. p.21, l.9-p.34, l.25, p.63, l.1-p.67, l.23 (Ex. 31); Simon Dep. Tr. p.76, l.3-p.77, l.8, p.100, l.22-p.102, l.17 (Ex. 32).

In addition, no less than twenty-five Plaintiffs have submitted Declarations supporting their request for class certification and describing the wide range of common experiences they shared as Vertical Screen Researchers, including:

- the close similarity of the work they performed as Vertical Screen Researchers;

- their daily performance of unpaid pre-shift work to comply with Vertical Screen's security and tracking measures, access their work stations, log-in to their computers, log-in to Vertical Screen's network and log-in to the ADP timekeeping program (*i.e.,* "pre-ADP login-in time");

- routinely working between one and twenty unpaid overtime hours each week;

- complaining to their Supervisors, Managers and Defendant's Human Resources, Payroll, Scheduling and Timekeeping personnel about working unpaid overtime; and

- not being properly paid for their overtime work despite these efforts.

8

*See* Abney, Autrey, Blackwell, Bunner, Calhoun, Capaccio, Dawson, Fluck, Garcia, Hawes, Johns,

Kosma, Lemerise, Litchner, McNeill, Mosley, Perez, Rizzo, Sanders, Serota, Shackelford, Simon,

Thompson and Waiters Declarations (Ex. 33-56).

      As a result of the extensive record evidence cited above, it is abundantly clear that the

putative Class members' claims share an overwhelming number of common, material facts,

including:

- they all worked for the same employer (*i.e.*, Vertical Screen);

- they all worked in the same job (*i.e.*, Vertical Screen Researcher), with the same job description and requirements;

- they all were classified as non-exempt, hourly employees;

- they all received approximately the same hourly rate of pay and had the same entitlement to receive time-and-a-half overtime premium rate for all hours worked over forty in each workweek;

- they all worked in one of Vertical Screen's three offices in Warminster, PA, all of which were physically proximate, had similar configurations and used the same systems and technology;

- they all worked under the common policies in Vertical Screen's Employee Handbook, including those relating to Hours of Operation, Identification Badges, Employee Entrance, Payment of Wages, Error In Pay, Overtime Pay and Time Records;

- they all received common training about Defendant's policies, their job duties, accessing Vertical Screen's facilities, tracking their work time and how they would be paid;

- they all followed the same procedures to comply with Vertical Screen's security and tracking measures and punch-in for each shift which included swiping their ID badge at the entrance door, opening the entrance door and proceeding into the vestibule, scanning their eye at the retina scanner in the vestibule, opening the interior entry door, travelling from the vestibule to their work station, waiting for any workers from the prior shift to complete their work, positioning themselves at their work station, turning on their computer, waiting for it to load, logging-in to their computer, opening the ADP E-Time program and waiting for it to load, logging-in to ADP Quick

Timestamp and dealing with any delays, issues, or problems that occurred at any stage of this procedure;

- they were all typically scheduled to work a 40 hour schedule each week;

- they all routinely accumulated an additional two to twenty hours each week on pre-ADP log-in time, approved overtime work and unapproved overtime work;

- they were generally paid their regular rate for up to 40 hours of work each week plus either their regular rate or an overtime premium rate for certain overtime hours they worked, but were not paid any wages for pre-ADP log-in time or for between two and twenty additional overtime hours they worked each week;

- they routinely communicated with their Managers and Defendant's Human Resources, Payroll, Scheduling and Timekeeping personnel about their unpaid overtime work, but these complaints did not resolve their concerns, or cause them to be properly paid for all of the overtime work they performed; and

- they did not have access to any formal system or procedure to request payment for work not recorded by the ADP system, record requests submitted to Supervisors or Managers, or confirm that time changes were made as requested.

These overwhelming, material, common facts strongly support Plaintiffs' request for class certification under the Federal Rules of Civil Procedure as discussed below.

## III.   ARGUMENT

### A.   Strong Public Policy Grounds Favor Class Certification

Pennsylvania's federal courts have repeatedly noted that class actions serve an important social purpose by making possible the effective assertion of many claims that otherwise might not be litigated. *See, e.g., Taha v. Bucks Cty. Pennsylvania*, 408 F. Supp. 3d 628, 648 (E.D. Pa. 2019) (class action mechanism "aggregates many claims—often because there would otherwise be no incentive to bring an individual claim"); *Hawk Valley, Inc. v. Taylor*, 301 F.R.D. 169, 191 (E.D. Pa. 2014) (thousands of plaintiffs with relatively small, nearly identical claims might not otherwise

seek or obtain relief absent a class action); *Martsolf v. JBC Legal Grp., P.C.*, 2005 WL 331544, *1 (M.D. Pa. Feb. 7, 2005) (class actions are essential to vindicate low-value claims, which would otherwise go unredressed).

Pennsylvania courts have also repeatedly recognized that class actions present substantial benefits, both to litigants and the court system, because they promote efficiency and fairness in the handling of large numbers of similar claims. *See, e.g., Riaubia v. Hyundai Motor Am.*, 2019 WL 3714497, *7 (E.D. Pa. Aug. 7, 2019) ("resolution of these claims as a class action is superior to individual lawsuits because it promotes efficiency"); *In re Processed Egg Prod. Antitrust Litig.*, 130 F. Supp. 3d 945, 953 (n.12) (E.D. Pa. 2015) ("in class actions, courts have equitable powers to manage the litigation in order to promote judicial economy and fairness to litigants"); *Kromnick v. State Farm Ins. Co.*, 1986 WL 7193, at *2 (E.D. Pa. June 20, 1986) (principles of efficiency and economy of litigation underlie federal class action rules).

Consequently, Pennsylvania's federal courts strongly favor class certification and have repeatedly instructed that class certification motions should be liberally granted. *See, e.g., Bros. v. Portage Nat'l Bank*, 2009 WL 10730421, *7 (W.D. Pa. Mar. 24, 2009) (noting policy considerations that favor class actions); Eisenberg v. Gagnon, No. CIV.A. 82-5051, 1986 WL 8127, *6 (E.D. Pa. July 16, 1986) (noting strong policy favoring securities class actions); *Bogosian v. Gulf Oil Corp.*, 1974 WL 861, *2 (E.D. Pa. Mar. 18, 1974) (noting policy considerations favoring consumer class actions). *See also Samuel-Bassett v. Kia Motors America, Inc.,* 34 A.3d 1 (Pa. 2011) (noting "Pennsylvania's policy favoring certification of class actions").

As discussed at length above, this case is particularly well-suited for class certification. The Named Plaintiff and the putative Pennsylvania Class members all worked for Metro Diner in the same three office buildings in Warminster, PA, performed the same job, received common

training, worked under the same terms and conditions, used the same time and pay systems to track their work and receive their wages, and now seek to enforce their rights under the PMWA.  The Plaintiffs who participated in this submission aver to have worked an average of 5.4 unpaid overtime hours per week.  *See* Abney, Autrey, Blackwell, Bunner, Capaccio, Dawson, Fluck, Garcia, Hawes, Kosma, Lemerise, Litchner, McNeill, Mosley, Perez, Rizzo, Sanders, Serota, Shackelford, Simon, Thompson and Waters Declarations at ¶22 (Ex. 34-55).  Given the favored status of class actions in Pennsylvania and the obvious commonality of Plaintiffs' claims, this Court should grant Plaintiffs' Motion and certify the proposed Class.

### B.       This Action Meets The Requirements For Class Certification Under Federal Rules 23(a)(1) – (a)(4)

For a lawsuit to proceed as a class action, the plaintiff must introduce facts meeting the four requirements of Federal Rule of Civil Procedure 23(a), namely:

> (1)     the class is so numerous that joinder of all members is impracticable;
>
> (2)     there are questions of law or fact common to the class;
>
> (3)     the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4)     the representative parties will fairly and adequately assert and protect the interests of the class.

As discussed below, the instant matter satisfies all of these requirements and should be certified to proceed as a class action.

### 1.       The Class is so numerous that joinder is impracticable

"Rule 23(a)(1) requires that a class be 'so numerous that joinder of all members is impracticable.'"  *In re Comcast Corp. Set-Top Cable Television Box Antitrust Litig.*, 2019 WL 4645331, *6 (E.D. Pa. Sept. 24, 2019), *citing* Fed. R. Civ. P. 23(a)(1).  "Generally, if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule

23(a) has been met." *In re Comcast Corp.*, 2019 WL 4645331, at *6, *citing Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001).

In this case, Plaintiff seeks to combine the claims of all Vertical Screen Researchers in Pennsylvania.  In July 2019, Defendant produced an address list to inform Plaintiff's FLSA Notice mailing that included 964 people.  It would be impracticable to join almost 1,000 people into a single lawsuit challenging the propriety of Defendant's conduct.  This overwhelming burden is precisely what the class action device was intended to alleviate – and precisely why the Court should find the numerosity requirement satisfied here.

### 2.    The Class shares common questions of law and fact

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." *In re Comcast Corp.*, 2019 WL 4645331, at *6, *citing* Fed. R. Civ. P. 23(a)(2).  To satisfy the commonality requirement, the putative class members' claims "must depend upon a common contention... of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *In re Comcast Corp.*, 2019 WL 4645331, at *6, *citing Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  Importantly, "a single common question or fact is sufficient to satisfy the commonality requirement. *In re Comcast Corp.*, 2019 WL 4645331, at *6, *citing Wal-Mart Stores, Inc.*, 564 U.S. at 359. In fact, "cases involving wage claims present perhaps the most perfect questions for class treatment." *Altnor v. Preferred Freezer Services, Inc.*, 197 F. Supp. 3d 746, 756-57 (E.D. Pa. 2016) (citation omitted).

The commonality requirement is met in this case because, as discussed above, Plaintiffs' claims plainly present common questions of law and fact including whether they should have been paid for their pre-ADP login time and whether they worked overtime hours that were not properly

paid.  These questions are also common because of the overwhelming similarity of Plaintiffs'
employment setting, which includes (but is not limited to) working in the same job, in the same
location and under the same policies, practices, terms and conditions, receiving the same training
and supporting their claims with materially-identical proof.  *See* Section II, above.  Because
Plaintiffs' wage claims turn on clearly-identifiable common issues, the Court should find the
commonality requirement satisfied here.[4]

### 3.    Named Plaintiff's claims are typical of the Class members' claims

"Rule 23(a)(3) requires that 'the claims or defenses of the representative parties are typical
of the claims or defenses of the class.'"  *In re Comcast Corp.*, 2019 WL 4645331, at *6, *citing*
Fed. R. Civ. P. 23(a)(3).  "The typicality inquiry asks 'whether the named plaintiffs' claims are
typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs
are aligned with those of the class.'"  *In re Comcast Corp.*, 2019 WL 4645331, at *6, *citing Beck
v. Maximus, Inc*., 457 F.3d 291, 295-96 (3d Cir. 2006).  "The Third Circuit sets 'a low threshold
for satisfying' the typicality requirement."  *In re Comcast Corp.*, 2019 WL 4645331, at *7, *citing
Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., 259 F.3d 154, 183 (3d Cir. 2001).  So long
as "the claims of the named plaintiffs and putative class members involve the same conduct by the
defendant, typicality is established regardless of factual differences."  *Id.*

Named Plaintiff's claims are typical of the Class members' claims because, as discussed at
length above, all of their claims flow from Defendant's common policies and practices that did not

---

[4] Each Plaintiff is likely entitled to different amounts of damages based on the number of weeks
they worked at Vertical Screen and the amount of unpaid overtime work they performed, but
differences in the amount of the individual plaintiffs' damages do not preclude a finding of
commonality.  *Rougvie v. Ascena Retail Grp., Inc.,* 2016 WL 4111320, *15 (E.D. Pa. July 29,
2016) ("We do not find the differences in state law damage calculations destroy commonality or
adequacy").

cause Researchers' pre-ADP log-in time to be tracked or paid and allowed Researchers to work an average of 5.4 unpaid overtime hours each week. *See* Sections II and IV(B), above. As a result of these similarities, Named Plaintiff's interests are aligned with the Class members' interests in the pursuit of unpaid wages owed under Pennsylvania law. Named Plaintiff's typicality is demonstrated by the fact that he is pursuing the same claims as the putative Class members, based on the same conduct by Defendant and subject to the same defenses.

### 4. Named Plaintiff and his counsel will adequately protect the Class members' interests

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." *In re Comcast Corp.*, 2019 WL 4645331, at *7, *citing* Fed. R. Civ. P. 23(a)(4). "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *In re Comcast Corp.*, 2019 WL 4645331, at *7, *citing Amchem Prod., Inc. v. Windsor,* 521 U.S. 591, 625 (1997). "The adequacy of representation requirement addresses two components: (1) the qualifications of class counsel; and (2) the interests and incentives of the class representatives." *In re Comcast Corp.*, 2019 WL 4645331, at *7, *citing Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 181 (3d Cir. 2012).

Plaintiffs' counsel will adequately represent the Class. Plaintiffs' counsel has extensive experience in class and collective wage actions, including many cases alleging PMWA claims in Pennsylvania's federal courts and seven certified class actions in Pennsylvania state court.[5] *See* Stephan Zouras Firm Resume (Ex. 57). Moreover, Plaintiffs' counsel have vigorously prosecuted

---

[5] *See Landis v. Reading Hospital,* Berks C.C.P., Case No. CV-15-8 (J. Fudeman); *Bordell v. Geisinger Medical Center*, Northumberland C.C.P., Case No. CV-12-1688 (J. Saylor); *Outlaw v. Secure Health, L.P.,* Carbon C.C.P., Case No. 12-2082 (J. Matika); *Glatts v. Crozer-Keystone Health System*, Phila., C.C.P. Case No. 0904-1314 (J. Bernstein); *Turner v. Mercy Health System,* Phila. C.C.P. Case No. 0801- 3670 (J. Fox); *Vanston v. Maxis Health System*, Phila C.C.P. Case No. 0806-5155 (J. Fox); and *Heiser v. SEPTA*, Phila. C.C.P., Case No. 9907-3167 (J. Levin).

this action at arm's length from Defendant's counsel.  As a result, this Court has ample basis to find that Plaintiffs' counsel will adequately represent the Class members' interests.

Mr. Garcia has likewise demonstrated his adequacy to serve as the Named Plaintiff in this action.  The adequacy requirement is intended to identify any "fundamental" "intra-class conflicts that may prevent the representative plaintiffs from adequately representing the entire class." *In re Comcast Corp.*, 2019 WL 4645331, at *8, *citing Dewey*, 681 F.3d 170, at 183-184.  "A fundamental conflict exists where some [class] members claim to have been harmed by the same conduct that benefitted other members of the class." *In re Comcast Corp.*, 2019 WL 4645331, at *8, *citing Dewey*, 681 F.3d 170, at 184.  Mr. Garcia worked for Defendant as a full-time, hourly Researcher in Warminster, PA during the relevant period, recorded his work time by clocking-in and -out of the ADP timekeeping system on Defendant's computers, typically worked 60 hours per week (including pre-ADP log-in time), but was only paid for 46 hours per week.  No fundamental intra-class conflict exists here, because Mr. Garcia has a strong interest in establishing Defendant's liability and seeks the same type of damages as the Class members for the same alleged violations of Pennsylvania's wage law.  *In re Comcast Corp.*, 2019 WL 4645331, at *8.

### C.       This Action Meets The Requirements For Class Certification Under Federal Rule 23(b)(3)

For a lawsuit to proceed as a class action, Plaintiffs must also satisfy one of the sub-parts of Federal Rule of Civil Procedure 23(b).  In this case, Plaintiffs seek certification under Rule 23(b)(3) which requires: "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

### 1. Common questions of law and fact predominate over individual issues

"Under Rule 23(b)(3), an opt-out class may be maintained if 'the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members.'" *In re Comcast Corp*., 2019 WL 4645331, at *8, *citing* Fed. R. Civ. P. 23(b)(3). The predominance inquiry is meant to test "whether proposed classes are sufficiently cohesive to warrant adjudication by representation [and] determine whether the proposed class would achieve economies of time, effort, and expense." *In re Comcast Corp*., 2019 WL 4645331, at *8, *citing Amchem*, 521 U.S. at 623. "[T]he focus of the predominance inquiry is on whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct." *In re Comcast Corp*., 2019 WL 4645331, at *8, *citing Sullivan v. DB Investments, Inc*., 667 F.3d 273, 298 (3d Cir. 2011)

Here, Plaintiffs claim that Defendant engaged in two common courses of conduct that equally affected all Vertical Screen Researchers in Pennsylvania: failing to pay its Researchers for any of their pre-ADP log-in time; and failing to pay its Researchers overtime premium wages for all the overtime hours they actually worked. These claims present many common, material questions of law and fact that clearly predominate over whatever individual issues Defendant may raise (including whether each Plaintiff claims the same amount of damages), supporting a grant of class certification. *See In re Comcast Corp*, 2019 WL 4645331, at *9.

### 2. Proceeding by way of a class action will be superior to litigating Plaintiffs' claims individually

"Rule 23(b)(3) requires 'that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" *In re Comcast Corp*, 2019 WL 4645331, at *9, *citing* Fed. R. Civ. P. 23(b)(3). "The superiority requirement 'asks the court to balance, in terms

of fairness and efficiency, the merits of a class action against those alternative available methods of adjudication.'" *In re Comcast Corp*, 2019 WL 4645331, at *9, *citing* Warfarin, 391 F.3d at 533-534.

Here, the putative Class may be comprised of almost 1,000 people who earned approximately $13.00 per hour ($20.00 per hour OT rate), claim approximately five unpaid overtime hours per week and are owed $100.00 per week. *See* Section II, above. While Defendant may owe each individual Plaintiff hundreds or thousands of dollars, depending on the length of their employment, there is no clear reason why any individual Class member would want to control the litigation of their own claim. *In re Comcast Corp*., 2019 WL 4645331, at *9, *citing Warfarin*, 391 F.3d at 534 (individual class members have little interest in "individually controlling" separate actions since each has a very small claim in relation to the cost of prosecution). It is also relevant that Plaintiffs have not seen any duplicative claim being filed by another Vertical Screen Researcher seeking to prosecute these claims – including since dissemination of the FLSA notice mailing in August 2019. *In re Comcast Corp*., 2019 WL 4645331, at *9, *citing* Warfarin, 391 F.3d at 534. *See* Jul. 24, 2019 Conditional Certification Order [Doc. 27]; Aug. 2, 2019 FLSA Notice Order [Doc. 30].

Finally, given the predominance of common issues presented by Plaintiffs' claims and this Court's particular skill in the management of highly complex, multi-party litigation, the management of this case does not present issues that should preclude class certification. *See generally, In re Comcast Corp*., 2019 WL 4645331, at *22; *Verma v. 3001 Castor, Inc*., 2016 WL 6962522, *14 (E.D. Pa. Nov. 29, 2016); *In re Nat. Football League Players' Concussion Injury Litig*., 307 F.R.D. 351, 361 (E.D. Pa. 2015), *amended sub nom. In re Nat'l Football League Players' Concussion Injury Litig*., No. 2:12-MD-02323-AB, 2015 WL 12827803 (E.D. Pa. May 8,

18

2015), *and aff'd sub nom. In re Nat'l Football League Players Concussion Injury Litig*., 821 F.3d 410 (3d Cir. 2016), *as amended* (May 2, 2016); *Am. Sales Co. v. SmithKline Beecham Corp*., 274 F.R.D. 127, 137 (E.D. Pa. 2010); *McDonough v. Toys R Us, Inc*., 638 F. Supp. 2d 461, 491 (E.D. Pa. 2009).

### D.   The Court Should Grant Final FLSA Certification

Having conditionally-certified Plaintiffs' FLSA unpaid overtime claim in 2019, *see* Jul. 24, 2019 Conditional Certification Order [Doc. 27], this Court must also determine if Plaintiffs' FLSA claim merits final certification. *Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2183 (2011). The standard applied at the final FLSA certification stage "is whether the proposed collective plaintiffs are 'similarly situated.'" *Wood v. AmeriHealth Caritas Servs., LLC*, 2020 WL 1694549, *7 (E.D. Pa. Apr. 7, 2020). The factors relevant to this inquiry include: "whether the plaintiffs are employed in the same corporate department, division, and location; whether they advance similar claims; whether they seek substantially the same form of relief; and whether they have similar salaries and circumstances of employment." *Wood*, 2020 WL 1694549 at *7. All of these considerations support a grant of final FLSA certification.

The FLSA Collective Members in this action all worked in Warminster, PA, in one of three locations Defendant operates within 0.3 miles of each other, performing similar types of computer-based background research services (*e.g.,* credit checks, education checks, criminal record checks, etc…). There are far greater similarities between Plaintiffs in these areas than have been repeatedly held to satisfy the "similarly situated" requirement for purposes of final FLSA certification. *See*, e.g., *Wood*, 2020 WL 1694549, at *7 (class members "were all Clinical Care Reviewers and Clinical Care Reviewer Seniors for Defendant"); *Alvarez v. BI Inc*., 2020 WL 1694294, *4 (E.D. Pa. Apr. 6, 2020) ("Opt-In Plaintiffs… worked as ISAP Case Specialists at Defendant's offices

around the country"); *Hall v. Accolade, Inc*., 2020 WL 1477688, *7 (E.D. Pa. Mar. 25, 2020) ("all members of the Collective worked as health assistants employed by Accolade").

The FLSA Collective Members in this action all advance the same claim (*i.e.,* that Defendant did not pay them for all of the overtime hours they actually worked) and seek the same form of relief (*i.e.,* recovery of their unpaid overtime wages). *See* Complaint at ¶¶ 1, 7-11, 47 [Doc. 1]. Class-wide claims for unpaid overtime are routinely held to satisfy the "similarly situated" requirement for purposes of final FLSA certification. *See*, e.g., *Wood*, 2020 WL 1694549, at *7 (all class members claim "they were misclassified as overtime-exempt and not paid for overtime"); *Alvarez v. BI Inc*., 2020 WL 1694294, *4 (E.D. Pa. Apr. 6, 2020) (plaintiffs claim "unpaid off-the-clock work, on-call time, and time related to home visits"); *Hall v. Accolade, Inc*., 2020 WL 1477688, *7 (E.D. Pa. Mar. 25, 2020) ("all members of the Collective advance the same claims - that they were… underpaid for overtime").

Finally, the FLSA Collective Members in this action received similar salaries and had similar circumstances of employment. The FLSA Collective Members: were full-time employees who earned approximately $13.50 per hour; were entitled to receive an overtime premium rate of approximately $20.00 for all hours they worked over 40 per week; worked under the same terms and conditions of employment; had to follow the policies and procedures in completing their work; had materially-identical job descriptions; received common training about Defendant's policies, their job duties, accessing Vertical Screen's facilities, tracking their work time and how they would be paid; used the same systems and procedures to perform their work and track their work time for payroll purposes; were not paid any wages for their pre-ADP log-in time; and claim not to have been paid for all of the overtime hours they actually worked. *See* Sections II and V, above (citing sources). These facts are more than sufficient to demonstrate that the FLSA Collective Members

are similarly situated and support a grant of final FLSA certification.  *See Alvarez*, 2020 WL 1694294, at *4 ("SAP Case Specialists shared the same responsibilities, pay, training, and management structure"); *Hall*, 2020 WL 1477688, at *7 ("because all Collective members were health assistants, they had sufficiently similar salaries and circumstances of employment"); *Beauregard v. Hunter*, 2019 WL 9355826, *5 (D.N.J. Sept. 27, 2019) ("Even where there are individual differences among plaintiffs, as long as a common plan is apparent, a class can be certified").

## IV.    CONCLUSION

The class action procedure is one of the most effective and efficient means to compensate workers for a defendant-employer's wrongful wage denial practices, particularly in cases benefitting low-wage workers with relatively small claims.  As set forth above, Plaintiffs' PMWA claim satisfies the requirements of Fed. R. Civ. P. 23(a) and (b)(3), demonstrating that class-wide treatment of the issues they raise will provide a fair, efficient and manageable method for adjudicating this dispute.  Furthermore, the facts underlying Plaintiffs' FLSA claim demonstrates that the FLSA Collective members are, in fact, similarly-situated, justifying a grant of final FLSA certification.  Therefore, in consideration of the strong public policy grounds favoring class and collective treatment of factually-similar claims, Plaintiffs respectfully ask the Court to grant this Motion and enter their proposed Order.

Respectfully submitted,

Dated: April 30, 2021

*/s/ David J. Cohen*
David J. Cohen
STEPHAN ZOURAS LLP
604 Spruce Street
Philadelphia, PA 19106
(215) 873-4836
dcohen@stephanzouras.com

James B. Zouras
STEPHAN ZOURAS LLP
100 N. Riverside Plaza, Suite 2150
Chicago, IL 60606
(312) 233-1550
jzouras@stephanzouras.com

*Counsel for Plaintiffs*