## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM GARCIA, | : | |
| *for himself and all others* | : | |
| *similarly situated,* | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | No. 18-4718 |
| | : | |
| VERTICAL SCREEN, INC., | : | |
| Defendants. | : | |

## **MEMORANDUM**

Plaintiffs are former employees of Defendant Vertical Screen who allege that they were deprived of overtime pay. Plaintiff William Garcia, on behalf of himself and all others similarly situated, brings this collective action and class action lawsuit against Vertical Screen for violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA") and the Pennsylvania Minimum Wage Act, 43 P.S. §§ 333.101, *et seq.* ("PMWA"). I exercise federal question jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over Plaintiffs' PMWA claims.

Plaintiffs allege that they were unpaid for overtime under the FLSA and the PMWA because: 1) they spent significant time logging into their computers and the company's timekeeping system that they were not compensated for; and 2) their managers and supervisors engaged in a policy or practice of shaving hours from their timecards without their knowledge.[1]

---

[1] The PMWA "substantially parallels" the FLSA, and federal courts are therefore "directed to interpretation of the FLSA when analyzing claims under the PMWA." *Bedolla v. Brandolini*, No. CV 18-146, 2018 WL 2291117, at *4 (E.D. Pa. May 18, 2018). This opinion therefore references primarily FLSA law, but notes where PMWA protections differ.

Vertical Screen moves for summary judgment and argues that there is insufficient evidence to sustain either of Plaintiffs' claims for uncompensated overtime. I will grant in part and deny in part Vertical Screen's motion for summary judgment.

## I.    FACTUAL BACKGROUND

Defendant Vertical Screen investigates the employment, education, criminal, and reference histories of job applicants for worldwide corporations, institutions, organizations, and government agencies. ECF No. 89-2, at ¶ 1. Plaintiffs in this case are full-time employees and former employees of Vertical Screen whose job was to perform research into job applicants. ECF No. 89-2, at ¶¶ 2-3. William Garcia, the only representative Plaintiff, worked as a researcher from August 26, 2013, through October 2, 2018. *Id.* at ¶ 31-32. He is joined by sixty-six non-representative Plaintiffs, who also worked as "researchers" or "team leaders" for the company between July 24, 2016 and July 24, 2019. ECF Nos. 33-45. Plaintiffs were full-time, non-exempt employees, and were typically scheduled to work forty hours weekly. *See* ECF No. 89-7 through 89-17, at ¶ 10. Plaintiffs were paid hourly for up to forty hours of work per week, and time-and-a-half for any hours above forty. ECF No. 89-2, at ¶ 14; ECF No. 89-6, at ¶ 4; ECF No. 89-7 through 89-17, at ¶ 4.

When employees of Vertical Screen arrive at work to begin their shift, they are required to verify their identity by swiping a photo identification card and scanning their retina. ECF No. 89-2, at ¶ 24. Once they pass through security and arrive at their desks, they must complete two steps before they can begin working: first, they must turn on and log into their computer. ECF No. 80, at ¶ 15. Second, they must open Vertical Screen's timekeeping application from their desktop and log into the system, at which point they are "clocked in." *Id.* Vertical Screen records employee time through an online platform called "Workforce Now" that is colloquially known as "ADP."

*Id.* at ¶ 6. Employees' time is only measured from when they clock in and out of the ADP system; therefore, time prior to clocking in is not compensated. *Id.* at ¶ 7-9.

Plaintiffs report having significant trouble with both steps of this log-in process. First, some Plaintiffs experienced lengthy delays and required steps to log into their computers, including:

- Delays of twenty to thirty minutes daily to log into Plaintiff Simmons' computer. ECF No. 89-25, at pp. 13.

- Five to ten minutes to reconfigure Plaintiff Serota's password every few months, which was time he was told was uncompensated. ECF No. 89-23, at p. 6.

- Twenty-to-thirty-minute delays logging into Plaintiff Lemerise's computer, which occurred around thirty to forty percent of the time he logged in. ECF No. 89-22, at p. 1.

- Hardware and software problems including required updates, reconfiguring passwords, and repeatedly logging in for Plaintiff Allen. ECF No. 89-18, at p. 10.

- Problems logging into the computer and software "more often than not" for Plaintiff Shackleford. ECF No. 89-24, at p. 19.

- Required password changes every few months for multiple Plaintiffs. ECF No. 89-20, at p. 16; ECF No. 89-21, at p. 27.

Even after successfully logging into their computer, numerous Plaintiffs dealt with additional delays attempting to log into the ADP system that were both frequent and lengthy, including:

- Ten to fifteen minute delays for Representative Plaintiff Garcia logging into ADP at least fifty times. ECF No. 89-19, at pp. 18, 68.

- Trouble logging into ADP between 350 and 400 times for Plaintiff Simmons, and delays of over twenty minutes to log into ADP "almost daily." ECF No. 89-25, at pp. 8, 11.

- Software malfunctioning at least twenty times, and once a month taking longer than ten minutes for Plaintiff Simon to log into ADP after starting her computer. ECF No. 89-26, at p. 19.

- Trouble for Plaintiff Johns logging into ADP for the two weeks when she started. ECF No. 89-21, at p. 27.

- Regular issues for Plaintiff Allen logging into the ADP system. ECF No. 89-18, at p. 10.

The ADP timekeeping system rounds all employee time to the nearest quarter-hour. ECF No. 89-2, at ¶ 10. Therefore, employees who clock in within seven minutes after the hour (for example, at 7:07am) will be paid as if they clocked in at the hour (at 7:00 a.m.). *Id.* at ¶ 11-12. Employees who clock in eight minutes after the hour, on the other hand, will be paid as if they clocked in fifteen minutes after the hour. *Id.* Employees who believe they have worked time that was not recorded in the ADP system can report this to their supervisor or manager, and a correction can be made. ECF No. 80, at ¶ 19. When a correction is made to employee time, it will be reflected on a document called the "ADP Timecard Audit Trail," which will show that an adjustment was made and whom it was made by. *Id.* at ¶ 21; ECF No. 79, at ¶ 13. Vertical Screen also tracks when an employee scans their ID card and their retina upon arriving to the building, and these times appear on a "Continuum Access Report." *Id.* at ¶ 27; ECF No. 81, at ¶ 5-6.

## II.    STANDARD OF REVIEW

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual dispute is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party.  *Id.*  In ruling on a motion for summary judgment, the court must draw all inferences from the facts in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  After the moving party has met its initial burden, the nonmoving party must then "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.  Both parties must support their factual positions by: "(A) citing to particular parts of materials in the record . . . ; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  The materials in the record that parties may rely on include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1)(A).  In opposing a motion for summary judgment, the nonmoving party may not "rely merely upon bare assertions, conclusory allegations or suspicions." *Fireman's Ins. Co. of Newark, N.J. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982).

The inquiry at summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

## III.   DISCUSSION

Plaintiffs bring two distinct claims for unpaid overtime under the FLSA and PMWA: 1) that they performed uncompensated pre-shift work, including starting their computer software and logging into the company's timekeeping system; and 2) that their supervisors reduced their time worked by one to two hours monthly without their knowledge. Vertical Screen argues that Plaintiffs have not brought forth sufficient facts to support these claims. Additionally, Vertical Screen argues that if the claims survive summary judgment, they should be limited to a two-year statute of limitations under the FLSA rather than a three-year statute of limitations.

### A.   Plaintiffs claim that they are owed compensation for time spent logging into their computers and timekeeping software.

Vertical Screen pays employees based on the time that they clock in and out of the ADP timekeeping software on their computers. ECF No. 89-2. at ¶ 6. Plaintiffs claim that the time spent prior to logging into their computers and timekeeping software is compensable time that they were not paid for. Vertical Screen argues that: 1) any time Plaintiffs did spend prior to successfully logging into ADP is non-compensable under the FLSA; 2) even if compensable, Plaintiffs cannot prove how much time they actually spent prior to logging into the software; and 3) any amount of time that Plaintiffs can prove that they spent is *de minimis*.  I will deny summary judgment on this claim because the time spent by Plaintiffs logging into their computers is compensable under the FLSA, and there are genuine disputes of material fact as to the amount of time Plaintiffs spent and whether that time is *de minimis*.

6

         i.    <u>Was Plaintiffs' pre-shift time compensable under the FLSA?</u>

Vertical Screen argues that any time Plaintiffs spent prior to logging into the ADP software successfully is non-compensable under the FLSA and the Portal-to-Portal Act. The Portal-to-Portal Act carves out the following work activities from the FLSA: commute time spent traveling to and from the place of performance, and any other activities that are "preliminary" or "postliminary" to an employee's principal activities. 29 U.S.C. § 254(a). An activity is neither "preliminary" nor "postliminary" when it is integral and indispensable to the principal activities that an employee is employed to perform. *Integrity Staffing Sols., Inc. v. Busk*, 574 U.S. 27, 35 (2014). Therefore, an activity that is integral and indispensable to an employees' principal activities is compensable under the FLSA. *Id.*

An activity is integral and indispensable when it is "one with which the employee cannot dispense if he is to perform his principal activities." *Id.* at 37. However, simply because an employer requires an activity does not make it integral and indispensable – it must be "tied to the productive work that the employee is *employed to perform*." *Id.* at 36 (emphasis in original). The Supreme Court has found that donning and doffing protective gear is integral and indispensable, and therefore compensable, for employees who worked in a battery plant and encountered toxic chemicals daily. *Steiner v. Mitchell*, 350 U.S. 247, 256 (1956). Similarly, employees in a meatpacking plant must be compensated for time spent sharpening knives because failing to do so would harm the quality of the meat and the production speed. *Mitchell v. King Packing Co.*, 350 U.S. 260, 262 (1956). However, time spent *waiting* to don and doff protective gear is too far removed to be compensable even though donning and doffing itself would be. *IBP, Inc. v. Alvarez*, 546 U.S. 21, 42 (2005). Security screenings also are not compensable when an employer "could have eliminated the screenings altogether without impairing the employees' ability to complete

their work." *Busk*, 574 U.S. at 35. Plaintiffs argue that time spent logging into and troubleshooting Vertical Screen's computer and timekeeping systems each day, which they were not paid for, was integral and indispensable to their principal activities as researchers. [2] This includes time spent "positioning themselves at their work station, turning on their computer, waiting for it to load, logging in to their computer, opening the ADP E-Time program and waiting for it to load, logging in to ADP Quick Timestamp and dealing with any delays, issues, or problems that occurred at any stage of this procedure." ECF No. 89-3 at p. 10.

Neither the Supreme Court nor the Third Circuit has addressed whether logging into a digital workspace and programs necessary for work is time compensable under the Portal-to-Portal act. The only federal appeals court to directly address the issue in this case is the Tenth Circuit, in *Peterson v. Nelnet Diversified Sols., LLC*. 15 F.4th 1033, 1041 (10th Cir. 2021). In *Peterson*, the Tenth Circuit addressed whether employees of a call center should be compensated for time spent logging into their computer and work programs. 15 F.4th at 1033. Prior to beginning work, an employee had to "wake up his or her work computer . . . enter[] his or her credentials…the computer then automatically launches the specialized software program . . . which contains a link

---

[2] Plaintiffs also argue that Vertical Screen should have paid them "for time they spend each day swiping their ID badge at the entrance door, opening the entrance door and proceeding into the vestibule, scanning their eye at the retina scanner in the vestibule, opening the interior entry door, travelling from the vestibule to their work station, waiting for any workers from the prior shift to complete their work." ECF No. 89-3 at p. 10. Security screenings pre-work, as well as waiting and travel time, are not compensable under the FLSA. *See Busk*, 574 U.S. at 34 (holding security screenings upon arrival to work as non-compensable because "[defendant employer] did not employ its workers to undergo security screenings, but to retrieve products from warehouse shelves and package those products for shipment"); *IBP, Inc. v. Alvarez*, 546 U.S. 21, 27, 40 (2005) (finding that waiting to put on protective gear was not covered by the FLSA, and noting that the Portal-to-Portal Act was passed to eliminate "walking on the employer's premises to and from the actual place of performance of the principal activity of the employee" from coverage under the FLSA). Therefore, only Plaintiffs' argument relating to signing into employees' computers and related activities that was pled in the complaint is addressed here.

to the timekeeping system . . . an employee [then] has access to the timekeeping system and may, and nearly always does, clock into the system and begin receiving payment." *Id.* at 1036. The Tenth Circuit found that, because the employees "make consistent use of the computer and its programs to perform their work" and because the employer "could not have eliminated these activities without impairing the employees' ability to complete their work," all the steps to boot up their computer, work-related programs, and timekeeping software was integral and indispensable to their work and therefore compensable under the FLSA. *Id.* at 1041-42 (quoting *Busk*, 574 U.S. at 35).

On the other hand, the Ninth and Fifth Circuit have held that logging into a computer or computer-like device that is used only to receive daily assignments is not compensable. *See Rutti v. Lojack Corp.*, 596 F.3d 1046, 1060 (9th Cir. 2010) (holding that a vehicle technician's "morning activities" that included logging on to a hand-held computer device . . . that informed him of his jobs for the day" were non-compensable); *Chambers v. Sears Roebuck & Co.*, 428 F. App'x 400, 417 (5th Cir. 2011) (holding that for appliance repairmen, "logging in to receive the first assignment in the morning" is non-compensable). The courts noted that when logging on occurs briefly and prior to the employee's commute, it will be considered part of the commute rather than the employee's principal activities. *Id.*

Like the call center employees in *Peterson*, Plaintiffs' work in this case both depended and centered on their computer access. As Researchers and Team Leaders, Plaintiffs were responsible for performing internet research and maintaining all research in the company's proprietary database. *See* ECF No. 89-2 at ¶¶ 3-4, ECF No. 89-40. Unlike the employees in *Rutti* and *Chambers*, who spent only a short period of time on their computers prior to beginning their commute, Plaintiffs in this case used their computers throughout their entire workday and required

them to perform their entire job. Upon arriving at work, employees logged into their computers where they could access their timekeeping system, ADP, as well as the internal system they used for their work and the internet sites where they performed their research. *See* ECF No. 89-18, at p. 25-26. Just like the employees in *Peterson*, Plaintiffs' "consistent use of the computer and its programs to perform their work" means that booting up their computers and the systems that they used to both complete their work and receive compensation for it can be compensable under the FLSA. *Peterson*, 15 F.4th at 1041-42; *see also Wilson v. Peckham*, No. 1:20-cv-565, 2021 WL 3168616, at * (W.D. Mich. July 26, 2021) (holding that time spent logging into computer programs at the beginning of a shift could be compensable because, "the bootup and login process . . . is akin to preparing a tool that the employee must use throughout the workday, like sharpening a knife"). Therefore, the time Plaintiffs spent booting up their computers and necessary software is compensable under the FLSA.

> ii.   Did Plaintiffs present sufficient evidence that they worked enough compensable time to be owed overtime?

Vertical Screen contends that, even if Plaintiffs' activities were compensable, they cannot survive summary judgment because they have not shown they spent enough pre-shift time to earn overtime. There is a dispute of material fact as to the amount of uncompensated time Plaintiffs spent attempting to log into their computers and start their timekeeping software.

Because the ADP system rounds down to the nearest quarter-hour, Plaintiffs would typically be compensated for any time under seven minutes that it took them to log in. ECF No. 89-2, at ¶ 10-12.  Vertical Screen asserts that it took Plaintiffs one to three minutes, on average, to log into their computers and clock in for their scheduled shifts. ECF No. 77, at p. 38. Plaintiffs disagree. First, Plaintiffs testified to significant time spent logging into their computer, frequently

in excess of the seven-minute grace period, including a company requirement to change their passwords every three months:

- Plaintiff Simmons spent between twenty and thirty minutes daily logging into her computer itself. ECF No. 89-25, at pp. 13.

- Plaintiff Serota spent five to ten minutes reconfiguring his password every few months and was told this time was uncompensated. ECF No. 89-23, at p. 6.

- Plaintiff Hawes had to change her password every two or three months, which often caused her to be locked out of ADP. ECF No. 89-20, at p. 16.

- Plaintiff Johns had to change her password every three months. ECF No. 89-21, at p. 27.

- Plaintiff Allen experienced hardware and software problems twice a week including required updates, reconfiguring passwords, and repeatedly logging in. ECF No. 89-18, at p. 10.

- Plaintiff Shackleford had problems logging into the computer and software "more often than not." ECF No. 89-24, at p. 19.

Even after successfully logging into their computers, multiple Plaintiffs experienced significant delays logging into the ADP system itself:

- Representative Plaintiff Garcia had trouble logging into ADP at least fifty times, and this process took him ten or fifteen minutes on numerous occasions. ECF No. 89-19, at pp. 18, 68.

- Plaintiff Lemerise had log-in trouble approximately thirty to forty percent of the time he logged into his computer, which took anywhere from 20 to 30 minutes each time. ECF No. 89-22, at p. 14.

- Plaintiff Allen had "regular issues" logging into the ADP timekeeping system. ECF No. 89-18, at p. 10.

- Plaintiff Simmons had trouble logging into ADP between 350 and 400 times, and it took her more than twenty minutes to log into ADP "almost daily." ECF No. 89-25, at pp. 8, 11.

- Plaintiff Johns had trouble logging into ADP for the two weeks when she started. ECF No. 89-21, at p. 27.

- Plaintiff Simon experienced ADP software malfunctions at least twenty times and estimates that once a month it took more than ten minutes to log into ADP after starting her computer. ECF. No. 89-26, at p. 19.

In support of their contention that Plaintiffs spent between one and three minutes logging in daily, Vertical Screen relies on Continuum Access Reports that show when seven Plaintiffs swiped into Vertical Screen's premises and when they were able to log into the ADP system. ECF No. 77, at p. 23. These reports show that it took those seven Plaintiffs on average less than five minutes to clock into the ADP system after arriving at Vertical Screen's premises. *Id*. But this data only applies to portions of the time that Plaintiffs worked at Vertical Screen, covering between six days and a year and a half.[3] Any time Plaintiffs worked between July 24, 2016 (when the three-year class certification period begins) and May 31, 2018 (when Vertical Screen's data on the Continuum Access Reports begins) is not covered by this data. Additionally, there is no time swipe

---

[3] *See* ECF No. 81, and attached exhibits. Vertical Screen has presented time records of 148 days for Plaintiff Garcia (ECF No. 81, Ex. A); 278 days for Plaintiff Simon (ECF No. 81, Ex. B), 259 days for Plaintiff Allen ((ECF No. 81, Ex. C); 6 days for Plaintiff Lemerise (ECF No. 81, Ex. D); 302 days for Plaintiff Hawes (ECF No. 81, Ex. E); 380 days for Plaintiff Capaccio (ECF No. 81, Ex. F); and 434 days for Plaintiff Simmons (ECF No. 81, Ex. G).

data for the remaining plaintiffs. Because Plaintiffs do not claim they experienced log-in issues every day, nor are Plaintiffs tying these issues to specific dates, these reports alone cannot prove that Plaintiffs never spent over seven minutes logging in, and instead, present a factual dispute that should properly go before a jury.[4] *See Musa v. Soar Corp.*, No. 13-2847, 2014 WL 6809019, at *10 (E.D. Pa. Dec. 1, 2014) ("Though the parties dispute Plaintiff's allegation of uncompensated overtime worked and the accuracy of Defendant's time-keeping records, Plaintiff's testimony [of uncompensated time worked] is sufficient to raise a genuine issue of material fact on this uncompensated pay issue and, thus, to overcome summary judgment.")

### iii.   Was any compensable time Plaintiffs worked *de minimis?*

Finally, Vertical Screen argues that even assuming Plaintiffs spent up to fifteen minutes pre-shift attempting to log in, this amount of time is *de minimis* and therefore non-compensable. ECF No. 77, at p. 38. Even when time is technically compensable under the FLSA, the *de minimis* doctrine "provides a limiting principle to compensation for trivial calculable quantities of work." *De Asencio v. Tyson Foods, Inc.*, 500 F.3d 361, 373-74 (3d Cir. 2007). When deciding whether or not time is *de minimis*, a court must consider "(1) the practical administrative difficulty of recording the additional time; (2) the aggregate amount of compensable time; and (3) the regularity of the additional work." *Id*. at 374 (quoting *Lindow v. United States*, 738 F.2d 1057, 1063 (9th Cir. 1984)).

---

[4] Vertical Screen also moves to dismiss Plaintiff Lemerise on the basis that he never worked more than forty hours in any given week. Plaintiff Lemerise testified in his deposition that he was scheduled to work forty hours a week, and did so on multiple occasions. ECF No. 76-30, at pp. 21-22, 76; ECF No. 76-46, at ¶ 21. Therefore a dispute of material fact exists as to whether or not Plaintiff Lemerise worked more than forty hours in any given week and therefore was owed overtime.

Determining whether or not time is *de minimis* is a fact-specific inquiry that should properly go before a jury when factual disputes exist as to how much time was actually spent. *See Walsh v. E. Penn Mfg. Co.,* --- F. Supp. 3d ---, No. CV 18-1194, 2021 WL 3666177, at *18 (E.D. Pa. Aug. 18, 2021) (finding that because a genuine issue of material fact remains as to the size of the aggregate claim, whether time spent by employees was *de minimis* "will be a critical factual issue for the jury to resolve"). The *de minimis* doctrine typically applies to "only a few seconds or minutes of work," and Vertical Screen argues that even up to fifteen minutes can qualify as *de minimis. De Asencio*, 500 F.3d 361, at 374 (quoting *Anderson* v. *Mt. Clemens Pottery Co.*, 328 U.S. 680, 692 (1946)). ECF No. 77, at p. 38. But some Plaintiffs report to spending between forty minutes and an hour daily to log into their computer and ADP. *See, e.g.*, ECF No. 89-25, at p. 13. Because there is a jury issue as to how much uncompensated time Plaintiffs spent logging in, it follows that whether that time is *de minimis* must also go before a jury. Therefore, I will deny summary judgment as to Plaintiffs' pre-shift overtime claims.

### B. Plaintiffs claim that their supervisors regularly "shaved time" off of their timecards without their knowledge.

Plaintiffs argue that Vertical Screen employed a policy or practice that allowed managers or supervisors to "shave" one to two hours of overtime per month off employees' recorded work time to reduce labor costs. ECF No. 1, at ¶ 8(c). This claim is unsubstantiated by the evidence, and therefore, I will grant summary judgment.

Plaintiff Garcia believes that Vertical Screen's assistant managers and higher-level employees were shaving time from his timecards. ECF No. 89-19, at p. 69. However, Plaintiff Garcia—the only representative Plaintiff in this action—is unable to identify any support for his belief that his weekly timecards were missing hours. ECF No. 89-2, at ¶ 60. In response, Vertical Screen has produced Plaintiff Garcia's timecards from November 15, 2015 through November 2,

2018, which cover the entire relevant time period.[5] These timecards demonstrate that no edits were made to Plaintiff Garcia's time except to increase the number of hours worked, and not a single entry was edited to decrease the hours Plaintiff Garcia worked. *See* ECF No. 77-3; ECF No. 80, at ¶¶ 29-30. Both Vertical Screen's Chief Operating Officer, Timothy Gadreau, and Vice President of Human Resources, Marcine Schiehser, attested to the accuracy of these time records. *See* ECF No. 79; ECF No. 80.

Most non-representative Plaintiffs did not believe that their hours were being deleted by supervisors and had no knowledge whatsoever of an alleged time-shaving scheme. *See* ECF No. 89-23, at p. 19 (To Plaintiff Serota's knowledge, he never recorded time that a supervisor deleted from his timecards, and he never heard complaints that time was being deleted); ECF No. 89-26, at p. 20 (Plaintiff Simon does not recall ever receiving a paycheck that was wrong, and is not aware of any upper-level employee cutting or deleting time for her or any other employee); ECF No. 89-22, at p. 44 (To Plaintiff Lemerise's knowledge, a coordinator or manager never deleted time he recorded from his paycheck); ECF No. 89-20, at p. 20 (Plaintiff Hawes does not recall a time when a supervisor deleted time from her timecards); ECF No. 89-19, at p. 38 (Plaintiff Allen never recorded overtime hours that she then was not paid for); ECF No. 89-24, at p. 17 (Plaintiff Shackleford never reported time to ADP that was then deleted, and never heard anyone else complaining about that happening). Any Plaintiffs that did suspect hours were being deleted from their timecards relied primarily on hunches. *See* ECF No. 89-25, at p. 17 (Plaintiff Simmons testifies that, although she believed time was being removed from her timecards by supervisors, she has no evidence of it happening). Absent supporting documentation, a hunch that timecards

---

[5] The three-year FLSA time period began July 24, 2016, and Plaintiff Garcia's employment with Vertical Screen was terminated on October 2, 2018.

"looked wrong" without evidentiary support cannot survive summary judgment. *See Sniscak v. Borough of Raritan*, 86 F. App'x 486, 487 (3d Cir. 2003) ("While [Defense] submitted voluminous payroll records seeking to show that Plaintiffs were properly compensated, Plaintiffs' blanket allegation that certain amounts were still owed to them was never connected to a single payroll record, timesheet, or other documentary evidence. Accordingly, no genuine issue of material fact was created and summary judgment was entirely proper.")

One nonrepresentative Plaintiff, Plaintiff Johns, testified that in January of 2017, her supervisor told her that she would not be paid for the overtime that she worked. ECF No. 89-21, at p. 7. But while Plaintiff Johns' testimony may present a dispute of material fact as to an individual claim for the removed hours on that single instance, it does not support the claim actually pled in Plaintiffs' complaint: that Vertical Screen had a policy or practice of allowing supervisors to systemically shave time from timecards without Plaintiffs' knowledge. One individual instance, even viewed in the light most favorable to Plaintiffs, does not support a claim of a widespread policy or practice even if this instance was corroborated or supported by documentation (which it is not).[6] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 593 (1986) ("[C]ourts should not permit factfinders to infer conspiracies when such inferences are implausible.")

---

[6] Even if Plaintiffs' time shaving claim were to survive summary judgment, it would certainly not survive the pending motion for collective certification. At the final certification stage, Plaintiffs must prove that the named Plaintiff is "similarly situated" to non-named Plaintiffs. Being similarly situated "means that one is subjected to some common employer practice that, if proved, would help demonstrate a violation of the FLSA." *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 528 (3d Cir. 2012). Plaintiff Garcia is the only representative Plaintiff, and has advanced no evidence of a common "time-shaving" practice that would violate the FLSA. One non-representative Plaintiff experiencing an alleged individual incident would not be sufficient to authorize collective certification on a class-wide claim. Therefore, Plaintiffs' time shaving claim would not pass muster at class certification even if it was not dismissed on summary judgment.

Because Plaintiffs do not present a genuine issue of material fact as to whether or not Vertical Screen engaged in a policy or practice of "time-shaving," I will grant summary judgment as to that claim.

### C.  Defendants argue that Plaintiffs claims should be governed by a two-year statute of limitations under the FLSA.

The statute of limitations for an FLSA unpaid overtime claim is two years, but if the violation is "willful," it is three years. 29 U.S.C. § 255(a).[7] Vertical Screen contends that Plaintiffs have not produced evidence to show Vertical Screen's violation was willful, and therefore, the FLSA statute of limitations should be limited to two years. ECF No. 77, at p. 52. Plaintiffs argue that willfulness is a contested issue of fact that should go to a jury. ECF No. 89-3, at p. 16.

"Willfulness under the FLSA is established where 'the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited.'" *Stone v. Troy Constr., LLC*, 935 F.3d 141, 150 (3d Cir. 2019) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)). Willfulness is a factual question that should go before a jury unless no reasonable factfinder could find for the employee. *Id.* at 150-51. In this case, a genuine dispute of material fact exists as to whether Vertical Screen knew or showed reckless disregard for the unpaid time employees spent logging into their computers prior to logging into ADP. Vertical Screen had access not only to Plaintiffs' ADP records, which captured the time they spent actually logged into their timekeeping software, but also to their records of arriving to and leaving the property every day. ECF No. 79, at ¶15. Numerous Plaintiffs testified to reporting the issues they dealt with logging into their systems, including:

---

[7] In PMWA claims, overtime violations always carry a three-year statute of limitations regardless of whether those violations are willful. *Gonzalez v. Bustleton Servs., Inc.*, No. CIV.A 08-4703, 2010 WL 1813487, at *6 (E.D. Pa. Mar. 5, 2010).

- When Representative Plaintiff Garcia experienced ADP log-in issues, he reported them to his supervisors and followed up several times. ECF No. 89-19, at pp. 18.

- Plaintiff Lemerise complained to the Human Resources department three different times, including about his issues logging into ADP and his computer. ECF No. 89-22, at p. 42-44.

- Plaintiff Simmons reported her log-in issues to her supervisor a number of times, and discussed them with numerous coworkers who had the same issues. ECF No. 89-25, at pp. 9, 15.

- Plaintiff Johns complained about her trouble logging into ADP to her supervisor. ECF No. 89-21, at p. 27.

- Plaintiff Allen complained to supervisors every time she had issues logging into ADP, around once or twice a week. ECF No. 89-18, at p. 10.

If a jury finds that Plaintiffs performed uncompensated work when logging into their computers, a reasonable jury could also find that Vertical Screen knew or should have known that Plaintiffs were doing so. Because there is a genuine dispute of material fact as to whether or not Vertical Screen willfully violated the FLSA, summary judgment as to the question of willfulness will be denied.

<u>s/ANITA B. BRODY, J.</u>

ANITA B. BRODY, J.

January 13, 2022