IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM GARCIA, : | |
| *for himself and all others* : | |
| *similarly situated,* : | |
| Plaintiff, : | |
| : | CIVIL ACTION |
| v. : | No. 18-4718 |
| : | |
| VERTICAL SCREEN, INC., : | |
| Defendants. : | |

**MEMORANDUM**

Plaintiff William Garcia, on behalf of himself and all others similarly situated, brings this collective action and class action lawsuit against Vertical Screen for failing to pay overtime in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA") and the Pennsylvania Minimum Wage Act, 43 P.S. §§ 333.101, *et seq.* ("PMWA"). I exercise federal question jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over Plaintiffs' PMWA claims.

Plaintiffs, employees of Vertical Screen, allege that they were unpaid for overtime under the FLSA and the PMWA when they spent uncompensated time logging into their computers and the company's timekeeping system. I will grant Plaintiff's motion for final collective certification and deny Vertical Screen's motion for decertification on the FLSA claims. I will deny Plaintiff's motion for Rule 23 class certification on the state law claims.

I.  **BACKGROUND**

On July 24, 2019, Judge Jan E. DuBois[1] granted conditional certification of Plaintiff's claims and approved notice to an FLSA collective action class composed of "all persons who have worked as full-time, hourly-paid Researchers or Team Leaders for defendant during the past three years." *See* ECF No. 26. Of those employees, 66 have opted in to the FLSA collective action. ECF Nos. 33-45. Before the court are two motions: Plaintiff's Motion to Certify a Rule 23 Class Action and to Grant Final FLSA Certification (ECF No. 76); and Vertical Screen's Motion to Decertify the Conditionally Certified Collective (ECF No. 87).

Plaintiffs were full-time employees, not exempt from the FLSA's overtime requirements. ECF No. 76-2, at p. 5-6, 9. Plaintiffs were paid hourly for up to forty hours of work per week, and time-and-a-half for any hours worked above forty. ECF No. 76-2, at p. 5-6, 9. Defendant Vertical Screen's daily work involves running pre-employment background checks in various databases (court records, criminal records, education records, employment records, etc.) for people applying for work with Vertical Screen's clients. ECF No. 87-3, at ¶ 1. Plaintiffs' job was to run these databases. ECF No. 76-3. Vertical Screen has two facilities: a corporate headquarters and operations facility in Warminster, Pennsylvania, and a technology and operations facility in New Jersey. ECF No. 76-4, at p. 7. All Plaintiffs worked at the Warminster, Pennsylvania campus of Vertical Screen, in three separate buildings that are a third of a mile apart. ECF No. 76-2, at p. 19.

To track employees' work hours, Vertical Screen uses an online timekeeping software called Workforce Now, known as ADP. ECF No. 87-3, at ¶¶ 7, 8. Plaintiffs recorded their time through ADP by logging into the software at the beginning of their shifts. ECF No. 87-3, at ¶¶ 9, 10. Plaintiffs report experiencing significant difficulty logging into Vertical Screen's timekeeping

---

[1] This case was reassigned from the Honorable Judge DuBois on May 11, 2021. ECF No. 83.

software: first, Plaintiffs dealt with delays logging into their computers. *See, e.g.*, ECF No. 76-26, at p. 10; ECF No. 76-28, at p. 16; ECF No. 76-29, at p. 27; ECF No. 76-30, at p. 1; ECF No. 76-31, at p. 6; ECF No. 76-32, at p. 19; ECF No. 76-33, at pp. 13. Even after successfully logging into their computer, numerous Plaintiffs report additional delays logging into the ADP system itself, ranging from delays of three minutes to thirty. *See, e.g.*, ECF No. 76-25, at pp. 18, 68; ECF No. 76-26, at p. 10; ECF No. 76-29, at p. 27; ECF No. 76-32, at pp. 8, 11; ECF No. 76-34, at p. 19.

The ADP timekeeping system rounds all employee time to the nearest quarter of the hour. ECF No. 87-3, at ¶ 11. Therefore, employees who clock in within seven minutes after the hour (for example, at 7:07am) will be paid as if they clocked in at the hour (at 7:00 a.m.). *Id*. Employees who clock in eight minutes after the hour, on the other hand, will be paid as if they clocked in fifteen minutes after the hour. *Id*. Employees who believe they have worked time that was not recorded in the ADP system can report this to their supervisor or manager, and a correction can be made. *Id.* at ¶ 12.

## II.  COLLECTIVE ACTION FINAL CERTIFICATION UNDER FLSA

Vertical Screen moves to decertify the conditionally certified collective action class. Plaintiff Garcia opposes decertification and asks the court to grant final certification on his FLSA claims.

Under the collective action provision of the FLSA, an employee alleging an FLSA violation can bring suit on "behalf of himself . . . and other employees similarly situated." 29 U.S.C. § 216(b). To be included in a collective action, plaintiffs must be "similarly situated" and must opt in by giving written consent to participate. *Id.*

The Third Circuit has set forth a two-step process for determining whether plaintiffs are "similarly situated." The first step occurs at the conditional certification stage. The named plaintiff must make a "modest factual showing," which requires that a plaintiff "produce some evidence, 'beyond pure speculation,' of a factual nexus between the manner in which the employer's alleged policy affected her and the manner in which it affected other employees." *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 536 n.4 (3d Cir. 2012) (quoting *Symczyk v. Genesis Healthcare Corp.*, 656 F.3d 189, 193 (3d Cir. 2011), *rev'd on other grounds*, 569 U.S. 66 (2013)). On July 24, 2019, Judge DuBois found that Plaintiff Garcia had made such a showing and granted conditional certification. ECF No. 26-27.

The second step occurs at the final certification stage. "[W]ith the benefit of discovery, 'a court following this approach then makes a conclusive determination as to whether each plaintiff who has opted in to the collective action is in fact similarly situated to the named plaintiff.'" *Camesi v. Univ. of Pittsburgh Med. Ctr.*, 729 F.3d 239, 243 (3d Cir. 2013) (quoting *Symczyk*, 656 F.3d at 193); see also *Zavala*, 691 F.3d at 536 ("It is clear from the statutory text of the FLSA that the standard to be applied on final certification is whether the proposed collective plaintiffs are 'similarly situated.'"). The plaintiffs bear the burden of making this showing by a preponderance of the evidence. *Zavala*, 691 F.3d at 537. A district court's decision to grant or deny final certification is not discretionary and must depend only on the court's factual findings as to whether the plaintiffs are in fact "similarly situated." *Id.* at 535. Once this factual finding is made in the affirmative, the statute mandates that the district court grant final certification. *Id.* ("We do not believe that the statute gives the district court discretion to deny certification after it has determined that plaintiffs are similarly situated.").

### a. *Zavala* factors

Being similarly situated "means that one is subjected to some common employer practice that, if proved, would help demonstrate a violation of the FLSA." *Zavala*, 691 F.3d at 538. The Third Circuit has adopted an "ad-hoc approach, which considers all the relevant factors and makes a factual determination on a case-by-case basis" for determining at the final certification stage whether the plaintiffs are in fact "similarly situated." *Id.* at 536. Factors a court may consider include: (1) whether the plaintiffs are employed in the same corporate department, division, and location; (2) whether they advance similar claims; (3) whether they seek substantially the same form of relief; (4) whether they have similar salaries and circumstances of employment. *Id.* at 536-37. The inquiry extends to questions of liability and damages. *Id.* at 538. "Plaintiffs may also be found dissimilar based on the existence of individualized defenses." *Id.* at 537.

The first *Zavala* factor directs a court to consider whether each of the plaintiffs are employed in the same department, division, and location. Plaintiffs are full-time, hourly-paid Vertical Screen researchers or team leaders within a three-year period. Plaintiffs all worked in Warminster, Pennsylvania, in three buildings that are a third of a mile from one another. ECF Nos. 76-3; 76-14 through 76-25, at ¶ 10. Vertical Screen argues that Plaintiffs worked different shifts, in different buildings, in different departments, and under different supervisors and managers. But Vertical Screen characterizes its Pennsylvania operations as three office buildings in the "Warminster campus," rather than as three separate facilities. *See, e.g.*, ECF No. 87-3, at p. 1; ECF No. 86, at p. 7; ECF N. 81, at p. 2. Additionally, Plaintiffs all worked under the same timekeeping and payroll regulations, and utilized the same computer systems—the very systems at issue in this case. *See Vasquez v. CDI Corp.*, No. 20-1044, 2020 WL 7227271, at n.2 (E.D. Pa. Dec. 7, 2020)

(finding employees similarly situated because they were subject to the same payment policies at issue in the case) .This factor weighs in favor of certification.

The second *Zavala* factor also weighs in favor of final certification: plaintiffs advance similar claims. *Zavala* demands that claims be "similar," not identical. *See Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996) ("[P]laintiffs need show only that their positions are similar, not identical, to the positions held by the putative class members." (internal quotation marks omitted) (alteration in original)). All Plaintiffs claim that they were unpaid for time spent prior to logging into the ADP system when they were performing compensable work, and they differ primarily in the amount of time they say this took on a typical day. These claims are sufficiently similar to satisfy the second *Zavala* factor. *See Hall v. Accolade, Inc.*, No. 17-3423, 2020 WL 1477688, at *7 (E.D. Pa. Mar. 25, 2020) (granting final certification of a collective action of home health aides who all claimed they were underpaid for overtime). This factor weighs in favor of certification.

The third *Zavala* factor directs a court to consider whether the plaintiffs seek substantially the same form of relief. Plaintiffs may satisfy this factor even where they seek different dollar amounts of relief. *See,* e.g., *Verma v. 3001 Castor, Inc.*, No. CV 13-3034, 2016 WL 6962522, at *5 (E.D. Pa. Nov. 29, 2016) ("While plaintiffs may have individualized amounts of damages for their minimum wage . . . claims, the form of relief sought by each opt-in plaintiff is the same."). Plaintiffs all seek monetary compensation for unpaid time spent prior to logging into the ADP system. The variation in dollar amounts is not a bar to collective adjudication of overtime claims— indeed, it is difficult to imagine that most FLSA collective claims for unpaid overtime involve identical damages for every Plaintiff. Instead, where employees allege an improper practice by their employer that "was formulated centrally and resulted in uncompensated overtime," the need

for individualized damages does not defeat a finding that Plaintiffs are similarly situated. *Andrako*, 788 F. Supp. 2d at 382-83 (quoting *Hill v. Muscogee Cnty. Sch. Dist.*, No. 4:03-CV-60 (CDL), 2005 WL 3526669, at *4 (M.D. Ga. Dec. 20, 2005)). Individualized damages determinations can often be determined via formula, and defenses "can be managed easily and fairly, if necessary, through the use of bifurcation, subclasses, representative testimony, or other appropriate procedural mechanisms." *Id.* at 383; *see also Verma*, 2016 WL 6962522, at *10. This factor weighs in favor of certification.

The fourth *Zavala* factor asks whether class members had similar salaries and circumstances of employment. All of the Plaintiffs were full-time employees, earned the same or approximately the same hourly wage for regular and overtime work, had the same job descriptions, received the same training, and used the same systems for payroll. The differences that Vertical Screen emphasizes—for example, differences in supervisors, managers, and overtime policies regarding approval for overtime—are irrelevant because Plaintiffs' claim that managers and supervisors engaged in "time-shaving" was dismissed at the summary judgment stage. Discretion of managers and supervisors, as well as the department-specific policies about approval for overtime, does not affect Plaintiffs' claim that any time spent prior to logging into ADP was unpaid because there is no allegation that it was unpaid at the discretion of managers or supervisors. Therefore, this factor weighs in favor of certification.

Because all of the *Zavala* factors weigh in favor of certification, Plaintiffs are similarly situated.

    b. **Individualized defenses**

Although the *Zavala* factors may find Plaintiffs are similarly situated, a collective action may nevertheless be decertified if a defendant raises individual defenses. *Zavala*, 691 F.3d at 537.

7

Vertical Screen argues that individual defenses make certification inappropriate because they will require multiple "mini-trials," both in determining liability and damages. In particular, Vertical Screen points to defenses related to 1) lack of actual or constructive knowledge by Plaintiffs' supervisors, and 2) lack of credibility of the Plaintiffs. To recover for uncompensated overtime, Plaintiffs must show that Vertical Screen had either actual or constructive knowledge of their overtime work. Vertical Screen argues that showing a lack of knowledge by Vertical Screen would require individualized inquiries into the supervisors and managers of every Plaintiff. This argument relies on *Zivali v. AT&T Mobility, LLC*, a case in which a New York district court decertified an FLSA collective action for store employees who alleged unpaid overtime. 784 F. Supp. 2d 456 (S.D.N.Y. 2011). In *Zivali*, thousands of employees at a number of different retail stores alleged they worked uncompensated overtime, and the court granted decertification in part because "Plaintiffs must demonstrate that each individual manager had actual constructive knowledge that plaintiffs were performing off-the-clock work without proper compensation." *Id.* at 456, 467-68.

In *Zivali*, different plaintiffs alleged different types of unpaid overtime: some claimed they reviewed work text messages and emails and received work phone calls when off-the-clock, some said that they worked lunch breaks off the clock or were not permitted to log time when opening and closing, and still others either were not expected to do the above or were expected to do so but compensated. *Id.* at 463-67. This wide variation in type of unpaid overtime was due in large part to the wide variation in management and policy, and the court held that the individual claims were too diverse for a collective action. *Id.* at 467-68.

In this case, Plaintiffs all claim the same type of unpaid overtime: time spent prior to logging into the ADP system because of delays in Vertical Screen's technology. Plaintiffs' claims

8

are not, like in *Zivali*, that some managers instructed them to perform work before logging in or refused to increase their time for hours worked. Rather, they argue that ADP failed to capture the time spent logging in which was compensable under the FLSA. If true, this would be true for all employees regardless of their manager.

Showing that Vertical Screen had actual or constructive knowledge of this unpaid overtime would not require showing each individual manager knew of the amount of time his or her employees spent logging in each day. A jury could find constructive knowledge based on testimony of the way that the ADP system worked, the fact that all supervisors and managers also utilized ADP, and the number of complaints that Plaintiffs allege they brought regarding difficulties with log-in. Additionally, all of Plaintiffs' claims are for the same type of uncompensated work, so mini-trials would not be necessary to determine whether or not that work was actually compensable under the FLSA. Therefore, Vertical Screen's defense of lack of knowledge does not defeat certification. Vertical Screen also argues that Plaintiffs have "substantial credibility issues" requiring rigorous and individualized cross-examination. "However, if that were enough to defeat final certification, FLSA actions could never proceed on a collective basis whenever witness credibility was at issue. Such an extreme view contravenes the well-settled principle that the FLSA should be liberally construed to achieve its purpose." *Rivet v. Office Depot, Inc.*, 207 F. Supp. 3d 417, 427 (D.N.J. 2016). Therefore, Vertical Screen's defenses are not sufficiently individualized to defeat certification. "Moreover, requiring the court to apply similar defenses in 254 separate trials as opposed to against plaintiffs within the collective action hardly promotes efficiency." *Andrako v. U.S. Steel Co.*, 788 F. Supp. 2d 372, 382 (W.D. Pa. 2011).

### c. Fairness and procedural considerations

Although litigating these claims as a collective action will undoubtedly involve some measure of individualized determination (as many, if not most, collective actions do), to litigate them separately would be "the worst possible outcome in terms of efficiency" and would "place each opt-in Plaintiff back at square one without the benefit of pooled resources to resolve the common liability questions in this case." *Andrako*, 788 F. Supp. 2d at 383 (citations omitted). This outcome would be "inimical" to the collective action provision of the FLSA. *Id.* "To the extent Defendant complains that decertification is necessary to protect its due process rights, 'these rights must be balanced with the rights of the plaintiffs, many of whom likely would be unable to bear the costs of an individual trial, to have their day in court.'" *Id.* at 383-84 (quoting *Wilks v. Pep Boys*, No. 3:02-0837, 2006 WL 2821700, at *8 (M.D. Tenn. Sept. 26, 2006)).

Because Plaintiffs have met their burden of showing by a preponderance of the evidence that they are similarly situated with respect to their FLSA claim, I will grant final certification.

## III. RULE 23 CLASS ACTION CERTIFICATION UNDER PMWA

Plaintiff Garcia moves for Rule 23 class certification of his claims under the PMWA. He seeks damages under Pennsylvania law for the same claims advanced under the FLSA: unpaid overtime work prior to ADP system login. His proposed class comprises: "All people who have worked as a full-time, hourly-paid Vertical Screen Researcher or Team Leader in Pennsylvania since November 1, 2015." ECF No. 76-2, at p. 1-2.

To warrant certification, a "class action must satisfy the four requirements of Rule 23(a) and the requirements of either Rule 23(b)(1), (2), or (3)." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 590 (3d Cir. 2012). To meet the requirements of Rule 23(a): "(1) the class must be 'so numerous that joinder of all members is impracticable' (numerosity); (2) there must be 'questions

of law or fact common to the class' (commonality); (3) 'the claims or defenses of the representative parties' must be 'typical of the claims or defenses of the class' (typicality); and (4) the named plaintiffs must 'fairly and adequately protect the interests of the class' (adequacy of representation, or simply adequacy)." *In re Cmty. Bank of N. Va.*, 622 F.3d 275, 291 (3d Cir. 2010) (quoting Fed. R. Civ. P. 23(a)(1)-(4)).

In this case, Plaintiff Garcia seeks certification under Rule 23(b)(3), which imposes the additional requirements that "(i) common questions of law or fact predominate (predominance), and (ii) the class action is the superior method for adjudication (superiority)." *In re Cmty. Bank*, 622 F.3d at 291. Plaintiffs seeking certification pursuant to Rule 23(b)(3) must also demonstrate that the proposed class is ascertainable. *See Byrd v. Aaron's, Inc.*, 784 F.3d 154, 163 (3d Cir. 2015).

Rule 23 is not a pleading standard; each requirement must be "satisf[ied] through evidentiary proof." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). "Factual determinations necessary to make Rule 23 findings must be made by a preponderance of the evidence. . . . [T]o certify a class the district court must find that the evidence more likely than not establishes each fact necessary to meet the requirements of Rule 23." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 320 (3d Cir. 2008). In *Behrend*, the Supreme Court "emphasized . . . that certification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'" 569 U.S. at 33 (citing *Dukes*, 564 U.S. at 350-51).

Vertical Screen raises numerous objections to class certification. Because Plaintiff's claim fails to meet the necessary predominance requirement of Rule 23(b)(3), I address that factor alone.

To satisfy the first requirement of Rule 23(b)(3), a plaintiff must show that "questions of law or fact common to class members predominate over any questions affecting only individual

members." Fed. R. Civ. P. 23(b)(3). The Supreme Court has described this as a rigorous analysis that may require courts to examine the evidence presented in the entire case to determine whether individual questions of law or fact—including liability, affirmative defenses, and damages—overwhelm class-wide questions. *Behrend*, 569 U.S. at 34. Although predominance may be established even where the plaintiffs cannot prove damages on a class-wide basis, plaintiffs "cannot show Rule 23(b)(3) predominance" where "[q]uestions of individual damage calculations will inevitably overwhelm questions common to the class." *Behrend*, 569 U.S. at 34; *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 374-75 (3d Cir. 2015).

Here, the putative class fails the predominance requirement because individual questions of fact, both relating to liability and to damages, predominate over class-wide questions. This is so even though class members are similarly situated under the FLSA. The primary common questions relating to liability are about Plaintiffs' roles and responsibilities and Vertical Screen's payment policies: essentially all remaining questions will require individualized inquiries. First, liability requires that Plaintiffs prove they worked over forty hours in a given week when they claim they are owed overtime, which will require individualized inquiries into their timesheets and hours scheduled. Second, liability requires that Plaintiffs prove they spent more than seven minutes logging into their computer and ADP system on a particular occasion, which not all Plaintiffs claim. *See, e.g.*, ECF No. 76-26, at p. 11 (estimating it took only three to five minutes to log into ADP when the system was malfunctioning). Third, Defendants will likely argue that the time Plaintiffs spent was *de minimis*, which will depend on the (significantly variant) amount of time Plaintiffs can prove they spent. All of these liability questions will likely require in-depth individualized examinations before a fact-finder.

In addition to the liability stage, damages questions will require such significant individualized inquiry that they will "inevitably overwhelm questions common to the class." *Behrend*, 569 U.S. at 34. While numerous Plaintiffs report delays logging in at the beginning of their shifts, there is extensive variation in the extent of these delays. *See, e.g.*, ECF No. 76-27, at pp. 18, 68 (estimating trouble logging in could take ten to fifteen minutes, which occurred around fifty times); ECF No. 76-36, at p. 11 (estimating it took only three to five minutes to log into ADP when the system was malfunctioning); ECF No. 76-28, at p. 16 (testifying to having no recollection of how frequently the system malfunctioned or how long it took); ECF No. 76-31, at pp. 8, 11, 13 (estimating twenty to thirty minutes to log into ADP "almost daily," and an additional twenty to thirty minutes to log into the computer itself prior to logging into ADP). Representative evidence would not be appropriate to estimate damages because of the extreme variation in both frequency and extent of delays. *Cf. Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 454-55 (holding representative evidence is appropriate to show how long it typically took employees to "don and doff" protective gear).

Plaintiff Garcia proposes no alternative methodology for calculating class-wide damages or for dividing damages among class members. See *Verma*, 2016 WL 6962522, at *10 (denying Rule 23 certification where plaintiffs had "not offered a workable common methodology for calculating individual damages"). A fact finder would have to, for every individual Plaintiff, ascertain: 1) how many weeks the Plaintiff worked forty hours; 2) how many days the Plaintiff experienced log-in delays to their computer; 3) how many days the Plaintiff experienced log-in delays to ADP; 4) whether the combination of those delays amounted to greater than seven minutes on individual days; 5) how much time the combination of those delays actually amounted to; 6) how frequently this occurred; 6) whether the Plaintiff informed their supervisor and/or manager

about the delays. Determining each of these questions for more than sixty individual plaintiffs will require dozens of mini-trials that will certainly predominate over questions of what those plaintiffs' claims have in common.

Denying a Rule 23 class while granting an FLSA collective action is legally consistent because the standards are distinct. First, "the 'similarly situated' requirement for conditional certification is substantially less stringent than the Rule 23(b)(3) predominance requirement." *Williams v. Sweet Home Healthcare, LLC,* 325 F.R.D. 113, 131 (E.D. Pa. 2018); *see also, e.g.*, *O'Brien v. Ed Donnelly Enterprises, Inc.*, 575 F.3d 567, 584 (6th Cir. 2009) ("While Congress could have imported the more stringent criteria for class certification under Fed. R. Civ. P. 23, it has not done so in the FLSA."), abrogated on other grounds by *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016). Second, the FLSA has a different focus from Rule 23. Collective certification requires only that Plaintiffs be "similarly situated," meaning they are "subjected to some common employer practice that, if proved, would help demonstrate a violation of the FLSA." *Zavala*, 691 F.3d at 537. The *Zavala* factors focus on the similarity of Plaintiffs' employment status, whereas Rule 23's predominance inquiry focuses on whether Plaintiffs will rely on the same proof at trial. The *Zavala* factors therefore allow for more flexibility when courts are confronted with FLSA claims that are not identical. *Zavala*, 691 F.3d at 536. This makes sense because a collective action only applies to individuals who affirmatively opt-in.The judgment will not bind individuals who did not participate. In a Rule 23 class action, although potential class members receive notice, they will be bound by the judgment if they do not affirmatively opt-out. *See Halle v. W. Penn Allegheny Health Sys. Inc.*, 842 F.3d 215, 225 (3d Cir. 2016) ("[M]andating that each individual must file an affirmative consent to join the collective action [] is the most conspicuous difference between the FLSA collective action device and a class action under Rule 23."). Courts

must, therefore, distinguish Rule 23 class actions from FLSA collective actions because "applying the criterion of predominance undermines the remedial purpose of the collective action device." *O'Brien*, 575 F.3d at 585-86.

Because Plaintiff Garcia has not shown, by a preponderance of the evidence, that common questions of fact predominate, I will deny class certification of his PMWA claim.

s/ANITA B. BRODY, J.

Anita B. Brody, J.

January 31, 2022

15